```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

vs.                            Case No.  2:10-cv-577-FtM-29DNF

BIH CORPORATION, WAYNE A. BURMASTER,
EDWARD A. HAYTER, NORTH BAY SOUTH
CORPORATION,  BARON   INTERNATIONAL
INC., THE CADDO CORPORATION, BEAVER
CREEK FINANCIAL CORPORATION,

                    Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Transfer or Dismiss and Memorandum of Law (Docs. ##28, 29). The Securities and Exchange Commission (SEC) filed a Response (Doc. #40). Defendants seek to transfer this case to the Eastern District of New York, or in the alternative, to dismiss Counts II-V of the Complaint.

**I.**

The SEC (plaintiff or SEC) alleges that from 2008 through at least March 2009, defendants Wayne A. Burmaster, Jr. (Burmaster) and Edward W. Hayter (Hayter) implemented a "pump-and-dump" scheme involving the sale of unregistered shares of BIH Corporation's (BIH) stock. (Doc. #1, ¶1.) The SEC claims that defendants artificially pumped up the price of BIH stock only to dump it on

unsuspecting investors in order to reap over a million dollars in illicit gains.

The Complaint alleges that BIH was a penny stock traded on the Pink Sheets, and claimed to be a holding company specializing in the restaurant and hospitality industry.[1]  The SEC alleges that Hayter and Burmaster pumped up the price of BIH stock by: (1) Creating a fictitious alter ego named Cris Galo (Galo), who was allegedly an accomplished entrepreneur and acting as the president and chief executive officer of BIH; (2) Disseminating false and misleading press releases; and (3) Placing false information on BIH's website regarding, among other things, the identity of the individuals directing BIH's affairs, BIH's operations and business relationships, and BIH's stock and dividend payments.  Hayter and Burmaster then illegally distributed BIH's stock to three co-defendant corporations, North Bay South Corporation (North Bay Corp.), Bimini Reef Real Estate, Inc. (Bimini Inc.) and Riverview Capital, Inc. (Riverview Inc.).  (Id., ¶2.)  Defendants then dumped more than $1 million of BIH's stock on investors and divided the proceeds among themselves and "Relief Defendants" Baron International, Inc. (Baron Inc.), Beaver Creek Financial Corporation (BCFC), and The Caddo Corporation (Caddo Corp.).  (Id.)

---

[1] BIH was previously known as Prime Restaurants, Inc. (Doc. #1, ¶ 4.)

The parties and participants are a diverse lot. During the relevant time period, Hayter and Burmaster are alleged to have controlled BIH from New York. (Id., ¶¶4-6.) BIH, however, is a Nevada corporation and represented to its investors that its principal place of business was in Fort Myers, Florida. North Bay Corp. is controlled by Burmaster, but incorporated in Texas and headquartered in Houston, Texas. (Id., ¶7.) BCFC is controlled by Hayter, but incorporated in Minnesota and headquartered in Edina, Minnesota. Caddo Corp. is also run by Hayter but incorporated in Texas and headquartered in Houston, Texas. (Id., ¶¶13-14.) Baron, Inc. is a New Jersey corporation headquartered in West Orange, New Jersey. All of Baron's principals are New Jersey residents. (Doc. #30, ¶13). Non-party Christian Gallo, a.k.a. Cris Galo, is a resident of Staten Island, New York. (Id., ¶15.) Bimini, Inc. is a Texas corporation that previously maintained an office in Minnesota and was controlled by defendant Christopher L. Astrom (Astrom). Riverview Inc. is a Minnesota corporation headquartered in Bloomington, Minnesota and controlled by defendant Damian B. Guthrie (Guthrie). Guthrie and Astrom reside in Florida. (Id., ¶¶8-11.)[2]

---

[2] On October 25, 2010, the Court entered consent judgments against Riverview Inc., Bimini Inc., Guthrie, and Astrom. (Docs. ## 24, 25.)

**II.**

Defendants first request that this Court transfer venue from the Middle District of Florida to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 12(b)(3). For the reasons set forth below, the Court declines to do so.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have broad discretion in determining whether to transfer a case to another district. Brown v. Conn. Gen. Life Ins. Co., 934 F.2d 1193, 1196-97 (11th Cir. 1991); England v. ITT Thompson Indus., Inc., 856 F.2d 1518, 1520 (11th Cir. 1988). In the absence of a contractual forum selection clause, the burden is on defendants to establish that their suggested forum is more convenient than the forum chosen by the plaintiff. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). "[P]laintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996)(citation omitted).

Courts engage in a two-step analysis under 28 U.S.C. § 1404(a) to determine the propriety of transfer to another district court. First, courts determine whether the action "might have been brought" in the proposed transferee court. This requires that the case could have been brought in the transferee district at the time

the action was filed. Hoffman v. Blaski, 363 U.S. 335, 341 (1960). Second, courts assess whether convenience and the interest of justice require transfer to the requested forum. See Jewelmasters, Inc. v. May Dep't Stores, 840 F. Supp. 893, 894-95 (S.D. Fla. 1993)(citing Cont'l Grain Co. v. The Barge FBL-585, 364 U.S. 19, 80 S. Ct. 1470 (1960)).  Section 1404 factors include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

As a threshold matter, defendants must show that the action could have been brought in the Eastern District of New York.  An action "might have been brought" in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court. Windmere Corp. v. Remington Prods., Inc., 617 F. Supp. 8, 10 (S.D. Fla. 1985).   There is no issue with respect to subject matter

jurisdiction³, and venue is likely proper under 28 U.S.C. § 1391(b). But defendants have failed to demonstrate that each of them would have been subject to personal jurisdiction in the proposed transferee forum. A conclusory statement that all of the defendants "reside and conduct their business in New York" is insufficient.⁴

Additionally, defendants have failed to demonstrate that consideration of the relevant factors establishes that the Eastern District of New York is the more appropriate venue for this case. Some, perhaps most, of the potential witnesses reside in New York, although some reside in Florida. While defendants contend that the various agreements and press releases at issue are located in New York, such documents can be brought to Florida without undue hardship or expense. The convenience of the parties tilts in favor of the defendants, but only slightly. It is true that defendants

---

³Subject matter jurisdiction is conferred by 15 U.S.C.§§ 77t, 77v, and 15 U.S.C. §§ 78u, 78aa.

⁴For example, Baron is a New Jersey Corporation headquartered in West Orange, New Jersey (doc. #1, ¶12) and Baron's principals are New Jersey residents (doc. #30, ¶13). Defendants have not demonstrated that Baron's contacts with New York were sufficient for the Eastern District Court of New York to exercise in personam jurisdiction at the time the SEC initiated this action. At this stage, Baron's desire to transfer venue, and implied consent to jurisdiction in New York is insufficient. See Hoffman v. Blaski, 363 U.S. 335, 342-43 (1960)("We do not think the s 1404(a) phrase 'where it might have been brought' can be interpreted to mean [] 'where it may now be rebrought, with defendants' consent.'"); see also 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 3845 (1976).

will be inconvenienced by a trial in Florida because all of them reside in New Jersey or New York, and that the SEC has a major regional office in New York. However, the SEC office investigating this matter is located in Miami, Florida and merely shifting the inconvenience from one party to another is insufficient to support a transfer. SEC v. Pattiz, 1981 WL 1614, No. 81-Civ-0064 (Mar. 26, 1981)(citation omitted).

More importantly, the SEC alleges that defendants disseminated the allegedly false press releases from Fort Myers. Assuming the truth of this allegation, the Court finds that the misconduct occurred in Fort Myers. See, e.g., In re Nemetron Corp. Sec. Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998)("Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received.").[5] Both district courts are familiar with the governing law and either one would have the ability to compel the attendance of witnesses. See 15 U.S.C. §77v; 15 U.S.C. §78aa (allowing for service of nationwide subpoenas in securities fraud actions). The New York action which defendants argue is related to this case has now been dismissed. Considering the totality of the circumstances, the Court finds

---

[5] Even if it is later shown that defendants disseminated the press releases from New York, the Court finds that defendants have not made a sufficient showing with respect to the remaining factors to warrant transfer.

insufficient reason to disturb the plaintiff's choice of forum. The Court, therefore, will deny the motion to transfer.

### III.

Defendants alternatively seek dismissal of Counts II-V of the Complaint for failure to state a claim. Counts II through IV allege fraud against BIH, Burmaster and Hayter in violation of Sections 17(a)(1)-(3) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) and rule 10b-5 of the Exchange Act, 15 U.S.C § 78j(b). Count V is asserted against Burmaster and Hayter only, and alleges aiding and abetting BIH's violations of Section 10(b) and Rule 10b-5.

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). Defendant's reliance on the former "no set of facts" rule (Doc. #29, p. 7) is misplaced.

Allegations of security fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting the fraud." The Eleventh Circuit has cautioned that "Rule 9(b) must not be read to abrogate rule 8, however, and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." Friedlander v. Nims, 755 F.2d 810, 813 n.3 (11th Cir. 1985).

**A. Counts II-IV: Fraud in Violation of Sections 17(a)(1)-(3) of the Securities Act, Section 10(b) and Rule 10b-5 of the Exchange Act.**

Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5, all proscribe fraudulent conduct in the offer or sale of securities. Section 10(b) of the Exchange Act makes it unlawful:

> ... for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—... (b) To use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). The SEC's Rule 10b-5, promulgated thereunder, states that,

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. "Section 10(b) was designed to protect investors involved in the purchase and sale of securities by requiring full disclosure." SEC v. DCI Telecomms., Inc., 122 F. Supp. 2d 495, 498 (S.D.N.Y. 2000)(citing Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 477-78, 97 S. Ct. 1292, 51 L. Ed. 2d 480 (1977)). The scope of liability is the same under section 10(b) and Rule 10b-5. See SEC v. Merch. Capital, LLC, 483 F.3d 747, 766 n. 17 (11th Cir. 2007); SEC v. Zandford, 535 U.S. 813, 816 n. 1, 122 S. Ct. 1899, 153 L. Ed. 2d 1 (2002).

To prove a violation under § 10(b), the SEC must show the defendants: (1) employed a device, scheme or artifice to defraud or made materially false statements; (2) in connection with the purchase or sale of securities; (3) using an instrumentality of interstate commerce; and (4) with scienter. Merchant Capital, 483 F.3d at 766 (citing Aaron v. SEC, 446 U.S. 680, 695, 100 S. Ct.

1945, 64 L. Ed. 2d 611 (1980)). Section 17(a) "requires substantially similar proof." SEC v. Wolfson, 539 F.3d 1249, 1256 (10th Cir. 2008)(quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996)).

Section 17(a) of the Securities Act provides that it is unlawful for any person, directly or indirectly, in the offer or sale of securities:

> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). "To show a violation of section 17(a)(1), the SEC must prove (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter." Merchant Capital, 483 F.3d at 766 (citing Aaron, 446 U.S. at 697, 100 S. Ct. 1945). However, to prove a violation of section 17(a)(2) or (3), "the SEC need only show (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with negligence." Id. (citing Aaron, 446 U.S. at 702, 100 S. Ct. 1945). "The principal difference between § 17(a) and § 10(b) lies in the element of

-11-

scienter, which the SEC must establish under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3)." Wolfson, 539 F.3d at 1256. Unlike private securities enforcement actions, the SEC need not prove reliance or injury under § 17 or § 10(b). Id. at 1258 n.14, 1260 n.17.

The Complaint alleges that Hayter, Burmaster and BIH made numerous false statements in press releases and on BIH's website, regarding the identity of the individuals directing BIH's affairs, BIH's operations and business relationships, and BIH's stock and dividend payments. (Doc. #1, ¶¶15, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37.) The Court finds that the SEC has sufficiently alleged the falsity of the representations.

The Court also finds that the SEC has sufficiently alleged the materiality of the misrepresentations. "The test for determining materiality is whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." SEC v. Carriba Air, Inc., 681 F.2d 1318, 1323 (11th Cir. 1982). Materiality, though, is a question of fact that may rarely be resolved at the motion to dismiss stage. In re Unicapital Corp. Secs. Lit., 149 F. Supp. 2d 1353, 1364 (S.D. Fla. 2001). "Only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of

law." Id. (quoting Weiner v. Quaker Oats Co., 129 F.3d 310, 317 (3d Cir.1997)). Here, the Complaint alleges that BIH, Burmaster and Hayter created a fictitious president and CEO and misrepresented his credentials, lied or exaggerated about various business deals and promised to pay a cash and stock dividend, when in fact the company was in no position to do so. The Court finds that there is a substantial likelihood that these misrepresentations would significantly influence whether an investor chose to invest money with BIH. Therefore, the SEC has sufficiently alleged materiality.

The SEC must also allege that the acts were done with scienter, an "intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976). "Scienter may be established by a showing of knowing misconduct or severe recklessness." SEC v. Carriba Air, Inc., 681 F.2d 1318, 1324 (11th Cir. 1982). Recklessness requires a showing of conduct that was an extreme departure from standards of ordinary care which presented a danger of misleading buyers or sellers that either was known or was so obvious that the company must have been aware of it. Id. (citing SEC v. Southwest Coal & Energy Co., 624 F.2d 1312, 1321 (5th Cir. 1980)). Here, the SEC has alleged that BIH, Burmaster and Hayter were intentionally deceitful and, at a minimum, were severely reckless. According to the Complaint, defendants created

a fictitious president and CEO and made various false statements which they knew were false when made.

To determine whether these actions occurred "in connection with" the purchase or sale of securities, the SEC need only show "a fraudulent scheme in which the securities transactions and breaches of fiduciary duty coincide." SEC v. Zandford, 535 U.S. at 825; accord Jacobini v. KPMG LLP, 314 F. Supp. 2d 1172, 1179 (M.D. Fla. 2004). This standard is to be interpreted flexibly to effect the purposes of the protective statute. Zandford, 535 U.S. at 819. Here, the SEC has alleged that during the time period in which the fraudulent press releases were made, BIH's stock price and trading volume increased. Prior to this period, BIH's trading volume was approximately 1.36 million shares at an average per share price of $0.0017; during, it rose to approximately 4.8 million shares and a per share price high of $0.05. (Doc. #1, ¶38.) Thus, the SEC has adequately alleged that BIH, Burmaster and Hayter acted "in connection with" the purchase or sale of securities.

Accordingly, the Court finds that Counts II-IV are adequately pled. Defendants' motion to dismiss these counts for failure to state a claim is, therefore, denied.

**B. Count V: Aiding and Abetting BIH's Violations of Section 10(b) and Rule 10b-5 of the Exchange Act.**

In Counts II-IV, discussed above, the SEC alleges that Hayter and Burmaster are liable for primary violations of the anti-fraud

provisions of Section 10(b) and Rule 10b-5 on the theory that they caused BIH's misstatements and participated in a scheme to defraud.[6] In Count V of the Complaint, the SEC alternatively alleges that Hayter and Burmaster are liable for secondary violations of the anti-fraud provisions pursuant to an aiding and abetting theory of liability.

"A defendant who is not himself a primary violator, but has knowledge of a primary violation and provides substantial assistance in it, is liable as an aider and abettor." SEC v. Monterosso, 768 F. Supp. 2d 1244, 1269 (S.D. Fla. 2011). Any person guilty of aiding and abetting a violation of the securities laws may be subject to the same penalties. See 15 U.S.C. § 78t ("[A]ny person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided."). To state a claim for aider and abettor liability, the SEC must allege that (1) a principal committed a primary violation; (2) the aider and abettor provided "substantial assistance" to the violator; and (3)

---

[6] See SEC v. May, 648 F. Supp. 2d 70, 77 (D.D.C. 2009)("[T]he SEC need not prove that the defendant actually made a misrepresentation or omission for primary liability—it need only show that he "caused the misstatements and omissions to be made, and knew that the statements were calculated to reach investors.").

the aider and abettor acted with scienter.  <u>SEC v. Johnson</u>, 530 F. Supp. 2d 315, 322 (D.D.C. 2008)(citing <u>Graham v. SEC</u>, 222 F.3d 994, 1000 (D.C. Cir. 2000)).

Here, the SEC has identified BIH as the principal violator, and alleged, with sufficient factual detail, that Burmaster and Hayter knowingly and willfully or recklessly provided "substantial assistance" to BIH.  Thus, the Court finds that Count V has been properly pled.

Accordingly, it is now

**ORDERED**:

BIH Defendants' Motion to Transfer or Dismiss (Doc. #28) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __31st__ day of August, 2011.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record