UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 2:10-CV-577-FTM-29 DNF

SECURITIES AND EXCHANGE COMMISSION,         )
                                            )
                    Plaintiff,              )
v.                                          )
                                            )
BIH CORPORATION,                            )
WAYNE A. BURMASTER, JR.,                    )
EDWARD W. HAYTER,                           )
NORTH BAY SOUTH CORPORATION,                )
BIMINI REEF REAL ESTATE, INC.,              )
RIVERVIEW CAPITAL INC.,                     )
CHRISTOPHER L. ASTROM, and                  )
DAMIAN B. GUTHRIE,                          )
                    Defendants,             )
                                            )
BARON INTERNATIONAL, INC.,                  )
THE CADDO CORPORATION, and                  )
BEAVER CREEK FINANCIAL CORPORATION,         )
                                            )
                    Relief Defendants.      )
_____)

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OMNIBUS MOTION *IN LIMINE* REGARDING INVOCATIONS OF THE 5th AMENDMENT BY DEFENDANTS WAYNE BURMASTER AND EDWARD HAYTER AND CHRISTIAN GALLO**

I. **INTRODUCTION**

Plaintiff Securities and Exchange Commission pursuant to the Court's December 23, 2013 Order (DE 170), moves the Court *in limine* requesting the Court to enter an Order:

1. Preventing Defendant Wayne Burmaster, Jr. and Christian Gallo from giving substantive testimony at trial;

2. Allowing the jury to consider drawing an adverse inference against Defendants Burmaster and Edward Hayter based on the assertions of the 5th Amendment by Burmaster, Hayter and Gallo; and

3. Preventing Burmaster and Hayter from offering hearsay evidence for the truth of the matter asserted regarding any out of court statement by Gallo.

## II.   PROCEDURAL BACKGROUND

The present case is a civil enforcement action brought by the Commission alleging Defendants Burmaster and Hayter violated Section 10(b) and Rule 10b-5(a)-(c) of the Securities Exchange Act of 1934 ("Exchange Act"); Sections 5(a) & 5(c) and 17(a)(1)-(3) of the Securities Act of 1933; and that Burmaster and Hayter aided and abetted BIH Corporation's violations of Section 10(b) and Rule 10b-5(a)-(c) of the Exchange Act.

For years, Burmaster, Hayter and Gallo have been asserting the 5th Amendment to numerous questions asked by the Commission.

### A.   For Nearly Five Years in Response to the Commission's Questioning, Burmaster Has Continually Invoked the 5th Amendment

On April 29, 2009, during his sworn investigative testimony while represented by counsel, Burmaster asserted the 5th Amendment in response to numerous questions asked by the Commission, including, the following: (a) *whether he knew Cris Galo*; (b) whether Galo went by any other names; (c) whether he had ever represented himself as being Galo; (d) *whether Galo is a real person*; (e) *all questions about Gallo*; (f) what involvement he had in communications with BIH's transfer agent; (g) whether he received emails and other communication sent to BIH; (h) whether he communicated with FINRA as Galo; (i) whether BIH Corporation had issued securities to him; (j) *whether Galo had signed a document in his presence*; (k) all questions about Riverview Capital, Inc.; (l) whether he knew Damian Guthrie; (m) all questions about Beaver Creek Financial Corp.; (n) all questions about Bimini Reef Real Estate; (o) all questions about Christopher Astrom; and (p) why he asked Richard Astrom to wire funds to Caddo Corporation. [*See* DE 67-1, Commission Statement of Facts in Support of its Motion for Summary Judgment, ¶

16 (DE 67, Ex. H)]. Burmaster did, however, testify that he understood that by invoking the 5th Amendment a Court may draw an adverse inference against him. [*Id*., at Ex. H at p. 20: 2-9].

More than two years later, on August 8, 2011, Burmaster asserted the 5th Amendment privilege to nearly every substantive question the Commission asked during his first deposition in this matter, including the following: (a) whether he set up email accounts for Galo; (b) whether North Bay had enough assets or income to qualify as an accredited investor; (c) whether Trust Services S.A. tried to purchase Baron from BIH; (d) whether he signed Galo's name on SEC filings and whether he forged Galo's name in communications with BIH's transfer agent; (e) *what he knew about Gallo*; (f) *whether he posed as Galo*; (g) whether BIH's purported corporate spokesmen Frank Nordstrom really exists; (h) *what role he had in disseminating or drafting BIH's press releases*; (i) *whether Burmaster and Edward Hayter created Galo to hide their involvement with BIH*; (j) *whether the information on BIH's website about Galo was false*; (k) whether there really was an offer to purchase Baron from BIH; (l) whether Burmaster and Hayter ran a pump-and-dump scheme; (m) all questions about Guthrie and Astrom; (n) whether Baron was a wholly owned subsidiary of BIH; (o) whether BIH had enough assets to pay a cash dividend as claimed in its press releases; (p) communications with NASDAQ/FINRA; (q) *whether Hayter and he pumped up the price of BIH's stock by issuing false press releases; (r) whether Hayter and he illegally distributed BIH's stock and whether they controlled BIH*; (s) whether North Bay acted as a statutory underwriter; (t) his knowledge that investors had questioned whether Burmaster and Hayter were running another stock scam; (u) whether he and Hayter fabricated quotes in BIH's press releases; (v) whether the representations that BIH was going to sell Baron for 19 to 23 cents a share were false; (w) all questions regarding Applebees, such as any revenues BIH/Baron purportedly earned from Applebees; (x) whether he made

untrue statements of material facts or employed a device, scheme or artifice to defraud; (y) whether he had a general awareness that he was part of an overall activity that was improper or illegal; and (z) whether he knew the false information Hayter and he disseminated into the marketplace artificially inflated the price and volume of BIH's stock. [*Id.*, ¶ 17 & De 67, Ex A - Burmaster's Deposition, August 8, 2011, pp. 10-12, 27-28, 30, 33, 35-51, and 54-126 (DE 67-75].

After Burmaster attempted to include a declaration where he substantively testified, the Commission moved to strike his declaration, since it represented "litigation by ambush." [DE 139 & 159]. Thereafter, the Court allowed the Commission to depose Burmaster for the second time. [DE 165].

On November 13, 2013, the Commission took its second deposition of Burmaster, and he once again asserted the 5th Amendment to nearly every substantive question the Commission posed, including the following: (a) any questions regarding Gallo; (b) any questions regarding Cris Galo; (c) any questions regarding the Declaration of Christian Gallo, *including whether Gallo's name was forged on the document and whether the notary signature and seal were forged*; (d) whether he signed Galo's name on any documents regarding BIIH Corporation; (e) whether he posed as Galo; (f) any questions regarding the Declaration of Edward Hayter;[1] (f) any questions regarding BIH's finances, or bank or brokerage accounts; (g) any questions regarding his company, Defendant North Bay South Corporation; (h) any communications between Hayter and himself; (i) any questions regarding Hayter; (j) any questions regarding BIH"s website; (k) any questions regarding Defendants North Bay, Riverview Capital Inc, Christopher Astrom, Bimini Reef Real Estate, Inc., and Damian B. Guthrie and Relief

---

[1] Hayter and Burmaster submitted Hayter's Declaration as part of their opposition to the Commission's Motion for Summary Judgment.

4

Defendants Baron International, Inc., The Caddo Corporation and Beaver Creek Financial Corporation; (l) whether BIH's purported corporate spokesmen Frank Nordstrom really exists; (m) any questions regarding email accounts used in connection with BIH; (n) any questions regarding communications with NASDAQ/FINRA; (o) any questions regarding sales of BIH's stock; (p) any questions regarding whether BIH received an offer to sell Baron for 19 to 23 cents a share; (q) whether BIH had enough assets to pay a cash dividend; (r) any questions whether in reality Gallo was an alter ego of Hayter and Burmaster and whether they came up with a scheme to make it appear that Gallo was an accomplished entrepreneur was running BIH; and (s) any questions regarding whether in fact Hayter and Burmaster controlled BIH. [*See* DE 166, Ex. A - November 13, 2013 Burmaster Depo., at pp. 6 & 8- 30 (DE 166-1)].[2]

Notably, on December 13, 2013, the Court granted the Commission's Motion to Strike Burmaster's Declaration. [DE 168].

### B. For Nearly Four Years, Gallo Has Repeatedly Invoked the 5th Amendment

During the Commission's investigation of this matter, the Commission filed a subpoena enforcement action against Gallo to compel him to testify. [*SEC v. Christian Gallo*, 1:10-MC-20444 (S.D. Fla. Feb. 11, 2010)]. After filing the subpoena enforcement action, on April 13, 2010 (nearly four years ago), Gallo asserted the 5th Amendment to numerous questions, including: (a) whether he ever had business investments in New York, New Jersey, Washington or Florida; (b) *whether he knows Galo*; (c) *whether he knows anything about BIH,* or the issuance or selling of BIH's stock; *(d) whether he had ever served as an officer or director for BIH*; (e) all questions regarding Baron; (f) *all questions regarding Burmaster* besides admitting Burmaster is his brother-in-law; (g) *all questions regarding Hayter*; (h) all questions regarding

---

[2] Notably, Burmaster also testified he understood that by asserting the Fifth Amendment the Court could draw an adverse inference, which could cause the Court to grant summary judgment against him. [*Id*., p. 6 & p. 30].

5

Riverview, Bimini Reef, North Bay South Corporation, Guthrie, Astrom, Beaver Creek, and Caddo; (i) *all questions about BIH's press releases or website; and (j)* **whether he had used the name Cris Galo to carry out business for BIH**. [*See* Commission's Statement of Facts, ¶ 13 (DE 67, Ex. F)].[3]

In response to the questions asked during the investigative testimony where he did not assert the 5th Amendment, Gallo testified, among other things, that his work experience primarily consisted of working "off-the-books" jobs such as collecting cans out of the recycling garbage bail in his neighborhood, and working as a public adjustor. Notably, Gallo did not testify he had ever worked for BIH or Prime Restaurants. [*Id*., ¶ 14].

On August 8, 2011, while represented by counsel, the Commission took Gallo's first deposition in this matter. During this deposition he asserted the 5th Amendment to nearly every question he was asked, including: (a) all questions regarding Riverview, Bimini Reef, North Bay, Guthrie, Astrom, Beaver Creek, and Caddo; (b) *questions regarding BIH's press releases and website*; (c) his involvement with the distribution of BIH's shares in an unregistered offering; (d) *all questions regarding BIH*; (e) *all questions regarding Hayter*; and (f) *all questions regarding Burmaster*. Gallo did, however, confirm his investigative testimony was truthful and accurate. [*See* Commission Statement of Facts, DE 67, ¶ 15 & DE 67, Ex. B - Gallo's August 8, 2011 deposition].

After Burmaster and Hayter attempted to include what purportedly was an affidavit by Gallo where he provided substantive testimony, the Commission moved to strike Gallo's affidavit. [DE 139 & 159]. Thereafter, the Court allowed the Commission to take Gallo's deposition for the second time. [DE 165].

---

[3] *See also* Gallo's Investigative Testimony, pp. 22-28, for pages worth of questioning where he repeatedly asserts the 5th Amendment to questions regarding BIH or his role at BIH.

On November 14, 2013, the Commission took its second deposition of Gallo. Gallo showed up nearly an hour late and was extremely rude by, among other things, cursing during his deposition.[4] During his November 14, 2013 deposition, Gallo asserted the 5th Amendment privilege to nearly every substantive question the Commission posed, including the following:[5] (a) any questions regarding his background; (b) whether he ever used the name Galo; (c) any questions regarding BIH; (d) all questions regarding the involvement of Hayter and Burmaster with BIH; (e) Defendants North Bay, Riverview Capital, Astrom, Bimini Reef Real Estate, and Guthrie and Relief Defendants Baron International, The Caddo Corporation and Beaver Creek Financial; (g) any questions whether he owned any BIH stock; (h) any questions about his business interests or investment experience; (i) any questions regarding BIH's website and press releases; (j) any questions regarding an email account used in connection with BIH; (k) any questions regarding communications with NASDAQ/FINRA; (l) any questions regarding BIH's finances, or bank or brokerage accounts; (m) whether BIH had the ability to pay a cash dividend; and (n) any questions regarding BIH or this case, besides his name and social security number. [*See* DE 166; Ex. B, pp. 6-18 (DE 166-2)].

On December 13, 2013, the Court granted the Commission's Motion to Strike Gallo's Affidavit. [DE 168].

### C. Hayter Also Asserted the 5th Amendment

During Hayter's investigative testimony he asserted the 5th Amendment privilege regarding the following: (a) interactions he had with Galo; (b) the last time he spoke to Galo; (c) Galo's background and contact information; (d) how many operating subsidiaries BIH had; (e)

---

[4] At the beginning of his deposition, Gallo stated: "You want me to answer your questions, you answer mine. If not, I will get up and leave. I don't give a crap really. Throw me in jail. Do whatever you want. Excuse my language, I don't give a f*%* . . ." [*See* DE 166, November 14, 2013, Gallo Depo., attached as Exhibit B, p. 5 (DE 166-2].

[5] Gallo stated he would plead "the Fifth on every single question you are going to ask, every single one." [*Id.*, p. 7].

7

what he knew about BIH's finances; (f) whether he negotiated with Galo; (g) whether he sent out communications on behalf of BIH; (h) whether he had been involved with BIH's promotional activities; (h) whether he solicited investments for BIH; (i) who was involved in providing content for BIH's website; and (j) whether he had input into or wrote BIH's press releases contained in Ex. 11. [*See* DE 67, Ex. G - Hayter's Testimony., pp. 59-61, 6-7; pp. 72-73, 9-13; pp. 74-75, 1-11; pp. 99-100, 12-22; pp. 103-104, 5-7; and p. 109, 4-10 (DE 67-81)].

### III.   MEMORANDUM OF LAW

Evidence must be relevant in order to be admissible.  Fed.R.Evid. 402.  Evidence is relevant only if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Fed.R.Evid. 401.  "The admissibility of evidence is committed to the broad discretion of the district court, and the decision to exclude certain evidence will be reversed only upon a clear showing of abuse of discretion." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F. 3d 548, 556 (11th Cir. 1998) (quoting *Walker v. NationsBank of Fla. N.A.*, 53 F. 3d 1548, 1554 (11th Cir. 1995*)). See also Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005) ("The district court has wide discretion in determining the relevance of evidence produced at trial.").

### A. The Court Should Preclude Burmaster and Gallo from Providing Substantive Testimony

Pursuant to Fed.R.Evid. 403, the Court should preclude Burmaster and Gallo from providing substantive testimony at this late juncture as it would impose "unfair prejudice" on the Commission.  It is "well accepted" that a witness' testimony is subject to being stricken when a deponent asserts the 5th Amendment privilege against self-incrimination and afterwards attempts to testify. *United States v. Parcels of Land,* 903 F.2d 36, 44 (1st Cir. 1990); *see also United States v. Certain Real Prop. & Premises Known as: 4003-4005 5th Ave.*, 55 F.3d 78, 84-86 (2d

Cir. 1995) (rejecting defendant's attempt to withdraw the invocation of the privilege); *United States v. Doddington*, 822 F.2d 818, 822 (8th Cir. 1987) (granting the government's motion to strike defendant's testimony after he asserted the 5th Amendment during the government's cross examination); *United States v. Real Prop. & Premises Known as 4408 Hillside Court*, 1992 WL 120217 at *3, 966 F.2d 144-45 (4th Cir. June 2, 1992) (striking defendant's affidavit filed after an assertion of the 5th Amendment). A civil litigant is free to invoke the 5th Amendment, but once the privilege is invoked, "the privilege cannot be tossed aside to support a party's assertions during trial or during summary judgment proceedings." *Pond v. Bd. of Trs.*, 2004 WL 2538645 at *4 (S.D. Ind. Sept. 9, 2004) (citing *SEC v. Zimmerman*, 854 F. Supp. 896 (N.D. Ga. 1993)). "Federal courts find such a preclusive effect grounded in the reasoning that a defendant may not use the Fifth Amendment to shield himself from the opposition's inquiries during discovery only to impale his accusers with surprise testimony in the summary judgment stage." *Id*. To allow a defendant to engage in such tactics would constitute "a positive invitation to mutilate the truth." *Parcels of Land*, 903 F.2d at 43 (quoting *Lawson v. Murray*, 837 F.2d 653, 656 (4th Cir. 1988)). This Court should decline the Defendants' invitation to mutilate the truth and strike the Declaration and Affidavit.

Moreover, to allow Burmaster and Gallo to substantively testify after years of asserting the 5th Amendment is not allowed. As one court noted:

> In those instances in which a party asserts the Fifth Amendment across-the-board in civil litigation to prevent an opponent from obtaining any discovery at all of evidence of the facts at issue and of the position of the party invoking the privilege on those facts, the injustice of allowing that party to put on evidence at a hearing or trial on the same facts is especially manifest.

*SEC v. Interlink Data Network of Los Angeles, Inc.*, 1993 WL 603274, at *8 n.97 (C.D. Cal. Nov. 15, 1993). *Accord SEC v. Cross Financial Services, Inc.*, 908 F.Supp. 718, 721 n.3 (C.D. Cal. 1995) (same).

As one court held when striking a declaration opposing summary judgment, "it would be abuse of the Fifth Amendment privilege to allow a civil litigant to use it to offer proofs while denying the adversary discovery of his contentions." *SEC v. Benson*, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987). *Accord SEC v. Smart*, 678 F.3d 850, 854-56 (10th Cir. 2012) (declaration properly stricken where defendant "did not attempt to withdraw his assertion of the Fifth Amendment until after the SEC had moved for summary judgment and the discovery cut-off date had expired").[6] At this late juncture, for the Court to allow Burmaster to substantively testify after frustrating the Commission's attempt to obtain discovery on these issues would constitute "a positive invitation to mutilate the truth." *Brown v. United States*, 356 U.S. 148, 156 (1958); *Certain Real Property*, 55 F.3d at 86 (affirming order rejecting evidence from defendant, noting prejudice inherent "when a litigant relies on the Fifth Amendment during discovery and then decides to waive the privilege much later in the proceeding"). The Court should, therefore, enter an order preventing Burmaster and Gallo from providing substantive testimony at trial.

### B. The Court Should Allow the Jury to Draw An Adverse Inference Against Burmaster and Hayter

Pursuant to Fed.R.Evid. 401, the Court should allow the jury to draw an adverse inference against Defendants Hayter and Burmaster based on their numerous assertions of the 5th Amendment privilege against self-incrimination. In *Baxter v. Palmigiano*, 425 U.S. 308 (1976),

---

[6] See also *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 855-58 (S.D.N.Y. 1997) (barring defendant from offering testimony after invoking the Fifth Amendment during discovery); *SEC v. Cassano*, 2000 U.S. Dist. LEXIS 12152, at *2-4 (S.D.N.Y. June 19, 2000) (precluding defendants from testifying on their own behalf after invoking the privilege against self-incrimination).

the Supreme Court stated "that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Id*. at 318; *accord SEC v. Brennan*, 230 F.3d 65, 77 (2d Cir. 2000); *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). Courts possess wide discretion determining the weight to give to an adverse inference on summary judgment. *SEC v. Monterosso*, 746 F. Supp. 2d 1253, 1261-62 (S.D. Fla. 2010) (granting Commission's motion *in limine* for adverse inferences against defendants who invoked the 5th Amendment). As further explained in *Monterosso*:

> The Eleventh Circuit has held that 'the trier of fact may take an adverse inference against the parties to a civil action refusing to testify on Fifth Amendment grounds.' *United States v. Two Parcels of Real Property Located in Russell County, Alabama*, 92 F.3d 1123, 1129 (11th Cir.1996); *Arango v. United States Dept. of the Treasury*, 115 F.3d 922, 926 (11th Cir.1997) ('The Fifth Amendment does not forbid adverse inferences against civil litigants, including claimants in civil forfeiture proceedings, who assert the privilege against self-incrimination.'). Rather, it is well-established that, '[f]orcing an individual to risk non-criminal disadvantage by remaining silent for fear of self incrimination in a parallel criminal proceeding does not rise to the level of an unconstitutional infringement.' *S.E.C. v. Incendy*, 936 F.Supp. 952, 956 (S.D.Fla.1996) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)). 'The courts consistently have held that the Fifth Amendment privilege may be used only as a shield and not as a sword that frees claimant from adducing proof in support of his burden.' *United States v. One Parcel of Real Property commonly known as 901 N.E. Lakewood Drive, Newport, Oregon*, 780 F.Supp. 715, 721 (D.Or.1991). 'Use of the privilege in a civil case may, therefore, carry some disadvantages for the party who seeks its protection.' *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir.1994).

[*Id*. at 1261].

* * *

> The imposition of adverse inferences in this case also conforms with Rule 403 of the Federal Rules of Evidence. Vargas and Lynch's silence is probative. *See LiButti v. United States*, 107 F.3d 110, 124 (2d Cir.1997) ('As for the weight to be accorded to adverse inferences, the district court should be mindful of Justice Brandeis' classic admonition: 'Silence is often evidence of the most persuasive character.').

[*Id*. at 1263].

11

The testimony of Burmaster and Hayter and their silence based on their refusal to answer questions is relevant to, among other things, that they acted with a high degree of scienter carrying out their fraudulent scheme. The Court should, therefore, instruct the jury they may draw an adverse inference against them for invoking the 5th Amendment.

Furthermore, pursuant to Fed.R.Evid. 401, the Court should allow the jury to draw an adverse inference against Defendants Burmaster and Hayter based on Gallo's repeatedly invoking the 5th Amendment. *See F.D.I.C. v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 977-78 (5th Cir. 1995) (where the Fifth Circuit held that evidence of a non-party's invocation of the 5th Amendment privilege is admissible so long as it is relevant and its probative value is not outweighed by the danger that it may unfairly prejudice the party to that suit). As also explained in *Monterosso*:

> The Second Circuit has delineated a number of non-exclusive factors to aid trial courts in determining whether adverse interests may be drawn against a party from the invocation of the Fifth Amendment privilege by a non-party. *See LiButti*, 107 F.3d at 123. These factors include: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. *Id.* An individual's status as a corporate officer gives rise to a presumption of ability to control and the degree of their participation in business is probative as to their knowledge. *F.T.C. v. Transnet Wireless Corp.*, 506 F.Supp.2d 1247, 1270 (S.D.Fla.2007). 'Whether these or other circumstances unique to a particular case are considered by the trial court, the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth.' *LiButti*, 107 F.3d at 124.

*Monterosso,* 746 F.Supp.2d at 1263-64.

Here the evidence will show the Gallo is nothing more than Burmaster and Hayter patsy, whom they used as a pawn to carry out their fraudulent scheme. The evidence will show Burmaster and Hayter dominated and controlled every faucet of the relationship. They claimed Gallo ran BIH, that he had an impressive background as an entrepreneur, and that everything

12

they did was at his behest. However, when the Commission questioned Gallo what his work background entailed, he testified, among other things, that his work experience primarily consisted of working "off-the-book" jobs such as collecting cans out of the recycling garbage bail in his neighborhood, and working as a public adjustor. Notably, Gallo did *not* testify he had ever worked for BIH. Moreover, to virtually every other question asked by the Commission during three separate sworn testimonies, Gallo asserted the 5th Amendment privilege to not criminally implicate himself. Just like, Justice Brandeis' classic admonition, Gallo's silence is "evidence of the most persuasive character." The Court should, therefore, instruct the jury that they may draw an adverse inference against Burmaster and Hayter based on the assertions of the 5th Amendment by Gallo.[7]

### C. The Court Should Not Allow Burmaster and Hayter to Introduce Hearsay Testimony Regarding Any Out of Court Statement by Gallo

Pursuant to Fed.R.Evid. 401, 403, 801, and 802, the Court should preclude Burmaster and Hayter from offering hearsay evidence for the truth of the matter asserted regarding any out of court statement by Gallo. It is black-letter law that if Burmaster or Hayter attempt to testify about any "statement" (as defined by Fed.R.Evid. 801(a)) that Gallo purportedly made outside the courtroom for the truth of the matter asserted, that the Court should preclude them from offering this inadmissible hearsay, unless some exception to the hearsay rules exists. [*See* Fed.R.Evid. 401, 801 & 802]. In addition, pursuant to Fed.R.Evid. 403, it would be extremely prejudicial to the Commission for Burmaster or Hayter to testify about any "statement" Gallo purportedly made outside the courtroom for the truth of the matter asserted. The Commission was unable to examine Gallo about any statements he supposedly made to Burmaster or Hayter,

---

[7] To be clear, the Commission is not requesting a jury instruction that the jury *must* draw an adverse inference against Burmaster and Hayter based on the assertions of the 5th Amendment by Burmaster, Hayter and Gallo. Instead, the Commission is requesting a jury instruction that the jury *may* draw an adverse inference.

13

since he asserted the 5th Amendment to nearly every question asked by the Commission during three separate sworn testimonies. Accordingly, the Court should enter an Order precluding Hayter or Burmaster from offering hearsay evidence for the truth of the matter asserted regarding any out of court statement by Gallo.

### Certification

Undersigned counsel tried to confer with Burmaster and Hayter by email on February 3, 2014, but as of the time of this filing had not yet received a response. If undersigned counsel becomes aware that either Defendant does not oppose the requested relief, he will promptly notify the Court.

### IV. CONCLUSION

The Commission respectfully requests that the Court enter an Order: (1) preventing Defendant Burmaster and Christian Gallo from giving substantive testimony at trial; (2) allowing the jury to consider drawing an adverse inference against Defendants Burmaster and Hayter based on the assertions of the 5th Amendment by Burmaster, Hayter and Gallo; and (3) preventing Burmaster and Hayter from offering hearsay evidence for the truth of the matter asserted regarding any out of court statement by Gallo.

A proposed order is submitted herewith.

Respectfully submitted,

February 3, 2014       By: s/Christopher E. Martin
                           Christopher E. Martin
                           Senior Trial Counsel
                           martinc@sec.gov
                           Arizona Bar No. 018486
                           Direct Dial No.: (305) 982-6386

                           Attorney for Plaintiff
                           **SECURITIES AND EXCHANGE COMMISSION**
                           801 Brickell Avenue, Suite 1800

Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mark David Hunter, Esq.
Leser Hunter Taubman & Taubman, PLLC
255 University Drive
Coral Gables, FL 33134
Tel: (305) 629-8816
Fax: (305) 629-8877
*Counsel for Defendants Bimini Reef Real Estate, Inc.,*
*Riverview Capital Inc., Christopher L. Astrom, and Damian B. Guthrie*

and that on February 4, 2014, I served the foregoing document and the notice of electronic filing by U.S. Mail to the following non-CM/ECF participants:

Edward Hayter, pro se
2167 East 21st Street, #103
Brooklyn, NY 11229

Wayne Burmaster, pro se
88 Moffitt Street
Staten Island, NY 10312

              s/Christopher Martin
              Christopher Martin