```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

vs.                                           Case No.   2:10-cv-577-FtM-29DNF

BIH CORPORATION, WAYNE A.
BURMASTER, EDWARD W. HAYTER, NORTH
BAY SOUTH CORPORATION, BIMINI REEF
REAL ESTATE, INC., RIVERVIEW
CAPITAL INC., CHRISTOPHER L. ASTROM,
DAMIAN B. GUTHRIE, BARON
INTERNATIONAL INC., THE CADDO
CORPORATION, BEAVER CREEK FINANCIAL
CORPORATION,

                Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Securities and Exchange Commission's Motion for Summary Judgment Against Defendants BIH Corporation, Wayne A. Burmaster, Jr., and Edward W. Hayter and the Relief Defendants (Doc. #67) filed on March 2, 2012. Defendants Burmaster and Hayter filed a joint Opposition (Doc. #136) and Response to the Securities and Exchange Commission's Statement of Undisputed Facts in Support of its Motion for Summary Judgment (Doc. #137) on February 14, 2013.[1] On November 21, 2013, plaintiff filed a Notice of Filing Supplemental Evidence in Further

---

[1]On December 13, 2013, the Court entered an Opinion and Order (Doc. #168) striking the Declaration of Wayne Burmaster (Doc. #137, pp. 34-37) and Affidavit of Christian Gallo (Doc. #137, pp. 38-44) attached to defendants' Response.

Support of its Motion for Summary Judgment and Statement of Undisputed Facts in Support of its Motion for Summary Judgment (Doc. #167).

## I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that

should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**II.**

Plaintiff Securities and Exchange Commission (plaintiff or SEC) filed a five-count Complaint (Doc. #1) against defendants Wayne A. Burmaster, Jr. (Burmaster), Edward W. Hayter (Hayter), BIH Corporation (BIH), North Bay South Corporation (North Bay), Bimini Reef Real Estate, Inc. (Bimini Reef), Riverview Capital Inc. (Riverview Capital), Christopher L. Astrom (Astrom), and Damian B. Guthrie (Guthrie), and relief defendants Baron International, Inc. (Baron International), The Caddo Corporation (Caddo), and Beaver Creek Financial Corporation (Beaver Creek) for violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.[2]  The SEC seeks a judgment from the Court enjoining each defendant from future violations of Sections 5(a), 5(c), and 17(a) of the

---

[2]On October 25, 2010, the Court entered consent judgments against Riverview Capital, Bimini Reef, Guthrie, and Astrom. (Docs. ## 24, 25.)  On September 26, 2012, the Court entered an Opinion and Order granting default judgments against BIH, North Bay, Caddo, and Beaver Creek; however, the Court withheld entry of the judgment pending submission of a motion by plaintiff.  (Doc. #121.)  On December 19, 2012, the Court entered a default judgment against Baron International.  (Doc. #132.)  Therefore, plaintiff's only pending claims are against defendants Hayter and Burmaster.

Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, requiring disgorgement of the ill-gotten gains, imposing a monetary penalty, and barring defendants from participating in any future offering of a penny stock.

In response, defendants Burmaster and Hayter, joined by other defendants, filed a Motion to Transfer or Dismiss (Docs. ##28, 29), which was denied (Doc. #45). Burmaster and Hayter then joined the other defendants in filing an Answer and Affirmative Defenses (Doc. #61). Subsequently, Burmaster filed an Amended Answer and Affirmative Defenses to Complaint and Crossclaim Against BIH Corporation (Doc. #93), and Hayter filed an Amended Answer and Affirmative Defenses (Doc. #95). On March 25, 2013, the Court entered an Opinion and Order (Doc. #145) striking a number of Burmaster and Hayter's affirmative defenses and Burmaster's counterclaim.

On March 4, 2014, the Court entered an Order (Doc. #185) striking Burmaster's Amended Answer and his remaining Affirmative Defenses (Doc. #93). Thus, the Court will deny without prejudice the motion for summary judgment as to defendant Burmaster to allow plaintiff to move for a default and default judgment. The Court will only consider the motion for summary judgment as to defendant Hayter.

**III.**

The relevant undisputed facts are as follows:

BIH was a Nevada corporation that was headquartered in Fort Myers, Florida; during the relevant time period, BIH was a penny stock that traded on the pink sheets; BIH's website stated that someone called Cris Galo, an "accomplished entrepreneur" with interests in numerous businesses, served as BIH's president and CEO; BIH's website further claimed that Galo had a benevolent business philosophy, since he only did "mutually beneficial agreements that result in a positive outcomes [sic] for everyone," under "no circumstances will" he enter any agreement that will not benefit BIH's shareholders, and that Galo maintained business investments in various states, including Florida; Burmaster's brother-in-law's name is Christian Gallo; on March 18, 2008, a press release was issued stating that a company called Prime Restaurants was changing its name to BIH; on April 22, 2008, a press release was issued stating that "after tedious negotiations [BIH] has just agreed to expend several million dollars to complete its acquisition of Baron;" on April 29, 2008, a press release was issued stating that Baron was awarded a contract for the "complete installation of beverage systems for all fifty (50) concession locations" at Citi Field in New York City, and that "revenues from this job are very substantial;" on June 20, 2008, a press release was issued stating that BIH had received an unsolicited offer to

pay up to 20 cents a share for its stock and its board of directors would meet over the weekend to consider the offer; on June 23, 2008, a press release was issued stating that BIH's board of directors, including Galo, had held a strategic meeting over the weekend regarding this offer for BIH's stock and that "all decisions" will consider the best interest of the company's shareholders; on June 25-26, 2008, press releases were issued stating that BIH was going to sell Baron for between 19 and 23 cents a share and that if the sale is completed BIH would pay a onetime cash dividend of between 7 and 9 cents a share; on August 19, 2008, a press release was issued stating that additional revenues Baron generated would create a higher than previously announced sales price; on November 11, 2008, a press release was issued stating that the potential purchase price of Baron had been increased due to "several lucrative new major accounts and increased revenue;" on November 13, 2008, a press release was issued stating that Baron had "signed a multi-million dollar renovation deal to supply and provide labor and materials for 20 Applebee's outlets;" on or about December 7, 2008, a press release was issued stating that "BIH will still pay its shareholders a dividend;" on December 10, 2008, a press release was issued stating that Galo would use all his powers as majority shareholder to make sure the dividend payment included both a stock and a cash dividend; on December 18, 2008, a press release was issued stating

that BIH would pay a $0.005 cash dividend by December 31, 2008 from "earnings;" on January 7, 2009, a press release was issued stating that BIH would make the dividend payment; on January 12, 2009, a press release was issued stating that BIH had provided the FINRA/NASDAQ dividend department with the requisite notice to issue a cash dividend; and BIH did not issue a cash dividend. (Doc. #179, pp. 11-14.)

### III.

As against defendant Hayter, plaintiff alleges claims of: (1) sales of unregistered securities in violation of Sections 5(a) and 5(c) of the Securities Act (Count I); (2) fraud in violation of Section 17(a)(1) of the Securities Act (Count II); (3) fraud in violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act (Count III); (4) fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder (Count IV); and (5) aiding and abetting BIH's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder (Count V). As the moving party, plaintiff bears the burden of demonstrating that there is no genuine issue about any material fact necessary to establish liability.

**A.   Count I: Sales of Unregistered Securities in Violation of Sections 5(a) and 5(c) of the Securities Act**

"In order to establish a prima facie case for a violation of § 5 of the Securities Act, the SEC must demonstrate that (1) the defendant directly or indirectly sold or offered to sell

securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect." SEC v. Calvo, 378 F.3d 1211, 1214-15 (11th Cir. 2004)(citations omitted). Liability for offerors and sellers is strict, "regardless of . . . any degree of fault, negligent or intentional, on the seller's part." Id. at 1219 (quoting Swenson v. Engelstad, 626 F.2d 421, 424 (5th Cir. 1980)). The defendant need not have directly sold the unregistered security "if it can be shown that he was a 'necessary participant' or a 'substantial factor' in the offering or selling. . . ." SEC v. Friendly Power Co., 49 F. Supp. 2d 1363, 1372 (S.D. Fla. 1999)(quoting SEC v. Holschuh, 694 F.2d 130, 139 (7th Cir. 1982)).

Plaintiff asserts that Hayter was a necessary participant to the issuance of BIH's stock to Riverview, Bimini Reef, and North Bay because: (1) Hayter found the individuals, Astrom and Guthrie, to issue the shares to; (2) Hayter structured the transactions where Astrom and Guthrie would pay no upfront consideration for the shares and then had them wire a portion of the sale proceeds; (3) Hayter found Astrom a broker to sell tens of millions of shares; (4) Hayter was the only person Guthrie interacted with to have BIH issue shares to him, while Astrom dealt only with Hayter and Burmaster; (5) after selling the stock, Bimini Reef and Riverview Capital each wired over $200,000 of the sales proceeds to Hayter; and (6) Hayter helped direct the promotional campaign that pumped

up the price of BIH stock. (Doc. #67, pp. 5, 14.) In support, plaintiff primarily cites to Astrom and Guthrie's sworn statements (Docs. ## 67-88, 67-89).[3] Hayter responds by admitting that: (1) Astrom and Guthrie, through their companies Bimini Reef and Riverview Capital, each wired over $200,000 of the sales proceeds to Hayter in order to satisfy debt owed to him by BIH, (Doc. #137, pp. 2, 3, 4, 26, 28, 32, 33); (2) he provided the contact information for a broker to Astrom's father, (id., p. 33); and (3) he was involved with writing some of BIH's press releases and disseminating them, (id., p. 28). However, Hayter denies that he approached Astrom and Guthrie or structured the transactions, citing his declaration. (Id., ¶¶ 24-26.)

After drawing all possible inferences in favor of defendant Hayter, the Court finds that there remain genuine issues of material fact as to whether Hayter was a "necessary participant" or a "substantial factor" in the offering or selling of the BIH

---

[3]Plaintiff also requests that the Court draw an adverse inference to Hayter's assertions of the Fifth Amendment in his investigative testimony, particularly regarding: (1) interactions he had with Galo; (2) the number of BIH's operating subsidiaries; (3) knowledge of BIH's finances; (4) his role in sending out communications on behalf of BIH; (5) his involvement with BIH's promotional activities; (6) whether he solicited investments for BIH; (7) who was involved in providing content for BIH's website; and (8) whether he had input into or wrote certain press releases for BIH. (Doc. #67, p. 11.) Hayter was subsequently deposed and there is no indication in the record that he asserted the Fifth Amendment during his testimony. (Doc. #67-77; Doc. #137, ¶ 10.) The Court therefore declines to draw the requested adverse inference.

stocks. Therefore, summary judgment will be denied as to Count I.

**B. Counts II-IV: Fraud in Violation of Sections 17(a)(1)-(3) of the Securities Act, Section 10(b) and Rule 10b-5 of the Exchange Act**

Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 all proscribe fraudulent conduct in the purchase or sale of securities. Section 10(b) of the Exchange Act makes it unlawful:

> ... for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... (b) To use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). The SEC's Rule 10b-5, promulgated thereunder, states that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. "Section 10(b) was designed to protect

investors involved in the purchase and sale of securities by requiring full disclosure." SEC v. DCI Telecomms., Inc., 122 F. Supp. 2d 495, 498 (S.D.N.Y. 2000)(citing Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 477-78 (1977)). The scope of liability is the same under Section 10(b) and Rule 10b-5. SEC v. Merch. Capital, LLC, 483 F.3d 747, 766 n.17 (11th Cir. 2007); SEC v. Zandford, 535 U.S. 813, 816 n.1 (2002). To prove a violation under Rule 10b-5, the SEC must show: (1) that defendant engaged in one of the three prohibited types of conduct set forth in Rule 10b-5, (2) in connection with the purchase or sale of securities, (3) made with scienter.[4] Merch. Capital, 483 F.3d at 766 (citing Aaron v. SEC, 446 U.S. 680, 695 (1980)).

Section 17(a) "requires substantially similar proof." SEC v. Wolfson, 539 F.3d 1249, 1256 (10th Cir. 2008)(quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996)). Section 17(a) of the Securities Act provides that it is unlawful for any person, directly or indirectly, in the offer or sale of securities:

(1) to employ any device, scheme, or artifice to

---

[4]"Scienter may be established by a showing of knowing misconduct or severe recklessness." SEC v. Carriba Air, Inc., 681 F.2d 1318, 1324 (11th Cir. 1982). Recklessness requires a showing of conduct that was an extreme departure from standards of ordinary care which presented a danger of misleading buyers or sellers that either was known or was so obvious that the company must have been aware of it. Id. (citing SEC v. Southwest Coal & Energy Co., 624 F.2d 1312, 1321 (5th Cir. 1980)).

>    defraud,[5] or
>
>    (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
>    (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

Plaintiff asserts that Hayter, along with BIH and Burmaster, committed securities fraud by: (1) making a series of misrepresentations and omissions on BIH's website and press releases regarding Galo, whether Burmaster and Hayter were running the company, claims about reducing the number of outstanding BIH shares, potential business transactions, contracts, and Baron being a wholly-owned subsidiary; and (2) carrying out a scheme that operated as a fraud by creating a fictitious person, Galo, forging his name on documents, hiding Burmaster and Hayter's involvement in BIH, and issuing shares in a scheme to evade Section 5. (Doc. #67, pp. 22-23.)  Further, plaintiff asserts that Hayter, along with BIH

---

[5]The Court notes that the proof for this element differs among the various subsections.  Section 17(a)(1) includes the terms "device," "scheme" and "artifice" which the Supreme Court has interpreted to mean "knowing or intentional misconduct" and, thus requiring the SEC to establish that defendant acted with scienter. Aaron, 446 U.S. at 696-97.  Sections 17(a)(2)and 17(a)(3) require only negligence. See Merch. Capital, 483 F.3d at 766; see also Wolfson, 539 F.3d at 1257 ("The principal difference between § 17(a) and § 10(b) lies in the element of scienter, which the SEC must establish under § 17(a)(1), but not under §17(a)(2) or §17(a)(3).").

and Burmaster, have displayed a high degree of scienter by knowing or were severely reckless in not knowing that: (1) Galo was not running the company; (2) Baron was not a wholly-owned subsidiary of BIH; (3) BIH could not have been buying its shares on the public market or pay a cash dividend; and (4) there was no contract to purchase Baron for BIH. (Doc. #67, p. 24.) Hayter states in his declaration that: (1) he was involved with writing some of BIH's press releases and disseminating them, but that the press releases involved information he received from Baron and that the information seemed plausible to him, (Doc. #137, pp. 28, 29, 31, 32); (2) he was a consultant to BIH and did not run the company, (id., pp. 27-31); and (3) Galo is not a fictitious person and was the majority shareholder and director during the relevant time period, (id.).

The Court finds that there remains a genuine issue of material fact as to whether defendant Hayter engaged in one of the prohibited types of conduct set forth in Rule 10b-5 or Section 17(a) and whether Hayter acted with scienter or negligence. Therefore, the motion for summary judgment will be denied as to Counts II-IV.

**C.  Count V: Aiding and Abetting BIH's Violations of Section 10(b) and Rule 10b-5 of the Exchange Act**

"A defendant who is not himself a primary violator, but has knowledge of a primary violation and provides substantial assistance in it, is liable as an aider and abettor." SEC v.

-13-

Monterosso, 768 F. Supp. 2d 1244, 1269 (S.D. Fla. 2011). Any person guilty of aiding and abetting a violation of the securities laws may be subject to the same penalties. See 15 U.S.C. § 78t(e) ("[A]ny person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided."). To prove a claim for aider and abettor liability, the SEC must show that (1) a principal committed a primary violation; (2) the aider and abettor provided "substantial assistance" to the violator; and (3) the aider and abettor acted with scienter. SEC v. Johnson, 530 F. Supp. 2d 315, 322 (D.D.C. 2008)(citing Graham v. SEC, 222 F.3d 994, 1000 (D.C. Cir. 2000)).

Again, the Court finds that there remains a genuine issue of material fact as to whether defendant Hayter acted with scienter. Therefore, the motion for summary judgment will be denied as to Count V.

Accordingly, it is now

**ORDERED**:

Plaintiff Securities and Exchange Commission's Motion for Summary Judgment Against Defendants BIH Corporation, Wayne A. Burmaster, Jr., and Edward W. Hayter and the Relief Defendants (Doc. #67) is **DENIED without prejudice** as to defendant Wayne A.

Burmaster, Jr. to allow plaintiff to move for a default and default judgment and is **DENIED** as to defendant Edward W. Hayter.

**DONE AND ORDERED** at Fort Myers, Florida, this <u>13th</u> day of March, 2014.

*/s/ John E. Steele*
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record
Pro se parties