```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

SECURITIES  &  EXCHANGE
COMMISSION,

      Plaintiff,

v.                                    Case No: 2:10-cv-577-FtM-29DNF

BIH CORPORATION, WAYNE A.
BURMASTER, EDWARD W. HAYTER,
NORTH BAY SOUTH CORPORATION,
THE CADDO CORPORATION, and
BEAVER CREEK FINANCIAL
CORPORATION,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion for Default Judgment of Permanent Injunction and Other Relief Against Wayne A. Burmaster, Jr. (Doc. #202) filed on May 2, 2014. Defendant Wayne A. Burmaster filed a Response (Doc. #204) on May 20, 2014. The Court finds that an evidentiary hearing on the motion is not required in this case and will render a decision based on the documents submitted.

**I.**

Plaintiff Securities and Exchange Commission (Plaintiff or Commission) filed a five-count Complaint (Doc. #1) against Defendants Wayne A. Burmaster, Jr. (Burmaster) and others for violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

On May 8, 2012, Burmaster filed his Amended Answer and Affirmative Defenses and a Cross-claim. (Doc. #93.) On May 29, 2012 the Commission filed a motion to strike Burmaster's amended answer and affirmative defenses, which Burmaster responded to on August 8, 2012. (Docs. ##100, 108.) Subsequently, the Court granted the motion to strike in part and denied it in part, by among other things, striking numerous affirmative defenses, treating other affirmative defenses as denials, and striking Burmaster's counter claims and third party complaints. (Doc. #145.)

By Court Orders (Docs. ##170, 175), the parties were to meet and confer to prepare the Final Joint Pretrial Statement. Burmaster, however, failed to attend the meeting or participate. (Doc. #178.) The Court gave Burmaster an opportunity to show cause why sanctions should not be imposed for his failure to cooperate and warned him that his failure to show cause would result in striking his Amended Answer and remaining affirmative defenses. (Doc. #180.) Burmaster did not respond to the Court's order to show cause. On March 3, 2014, the Commission notified the Court of Burmaster's failure to show cause. (Doc. #182.) Thereafter, the Court struck Burmaster's Amended Answer and remaining affirmative defenses. (Doc. #185.) On March 11, 2014, the Commission moved for entry of clerk's default against

Burmaster. (Doc. #186.)[1]  On April 4, 2014, the Magistrate Judge issued an Order granting the Commission's Motion for Entry of a Clerk's Default, and the clerk entered a default against Burmaster on April 8, 2014. (Docs. ##199-200.)  Therefore, plaintiff has complied with the necessary prerequisite under Fed. R. Civ. P. 55(a) for a default judgment.

**II.**

"A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. [ ] A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations. [ ] A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof." Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009)(internal quotations and citations omitted).

Deeming all allegations in the Complaint (Doc. #1) as admitted, Burmaster and Edward W. Hayter (Hayter) implemented a "pump-and-dump" scheme involving the sale of unregistered shares

---

[1] The Commission filed its Motion for Summary Judgment against Burmaster and others on March 2, 2012. (Doc. #67.)  On March 13, 2014, the Court denied without prejudice the Commission's Motion for Summary Judgment as to Burmaster to allow the Commission "to move for default and default judgment" against him. (Doc. #189, pp. 14-15.)

of BIH Corporation's (BIH) stock to the investing public. BIH was a penny stock and claimed to be a holding company specializing in the restaurant and hospitality industry. BIH's website claimed that an individual named Cris Galo, an "accomplished entrepreneur," was the president and CEO of BIH. In reality Galo never existed and was simply an alter ego of Burmaster and Hayter. Under the guise of the fictitious Galo, Burmaster and Hayter controlled every aspect of BIH.

In order to effectuate the pump-and-dump scheme, Burmaster and Hayter made numerous material misrepresentations in the form of fraudulent press releases issued by BIH:

- On April 22, 2008, BIH announced that it had agreed to acquire Baron International (Baron), a company which builds restaurants and sells beverage systems and equipment. Though BIH claimed that the acquisition cost "several million dollars," in actuality the purchase price was much lower.

- On April 29, 2008, BIH announced that Baron was awarded a contract for the complete installation of beverage systems for all fifty concessions locations at Citi Field in New York City. BIH issued additional press releases on June 2 and June 19, 2008 in which they touted Citi Field as a client. In actuality, Baron had subcontracted to install only the beer dispensing equipment at Citi Field and the contract was cancelled prior to the June 19th press release.

- BIH issued multiple press releases discussing a purported buyback program for BIH shares which were false and misleading because Burmaster and Hayter were simultaneously flooding the market with unregistered BIH shares.

- On June 25 and 26, 2008, BIH issued press releases announcing that Baron would sell for between 19 and 23 cents a share and if the sale was completed, BIH would pay a one-time cash dividend of between 7 and 9 cents a share. On August 19, 2008, another press release was issued regarding the "pending sale" and claimed additional revenues Baron generated would

create a higher sales price. On November 11, 2008, a press release was issued claiming another purchase price increase. These press releases were false and misleading because Baron had not obtained any additional revenue or new accounts sufficient to generate a higher sales price.

- Between December 7, 2008 and January 12, 2009, BIH issued several press releases announcing plans to pay a stock and cash dividend. These press releases were false and misleading because BIH did not have sufficient funds to pay the promised dividend and had not provided the FINRA/NASDAQ dividend department with the requisite notice to issue a cash dividend.

- Additionally, BIH issued numerous press releases quoting Galo and describing actions taken by Galo. These press releases were false and misleading because Galo does not exist.

As a result of these false and misleading press releases, Burmaster and Hayter were able to dramatically increase the price and trading volume of BIH shares.

From 2008 through March 2009, Burmaster and Hayter sold unregistered shares of BIH stock to various companies. One of those companies, North Bay South Corporation (North Bay), was controlled by Burmaster. No registration statement has been filed or is in effect with the Commission in connection with these sales, and BIH, Burmaster, and Hayter were not subject to any exemption from registration. BIH received little or no consideration for issuing tens of millions of shares to those companies. In turn, the companies dumped more than $1 million of BIH stock was on "unwitting" investors. The companies retained a portion of the illegally obtained sales proceeds and sent the remaining funds to entities controlled by Burmaster and Hayter.

The five-count Complaint alleges that Burmaster and others violated the Securities Act of 1933, the Securities Exchange Act of 1934, and Exchange Act Rule 10b-5. Count I states that no registration statement was filed or in effect with the Commission and Burmaster and others sold securities, carried securities, or offered to sell or offered to buy securities through interstate commerce without a registration statement in violation of Sections 5(a) and 5(c) of the Securities Act.

Count II states that Burmaster, Hayter, and BIH used interstate commerce to offer or sell securities while knowingly, willfully, or recklessly employing devices, schemes, or artifices to defraud in violation of Section 17(a)(1) of the Securities Act.

Count III states that Burmaster, Hayter, and BIH obtained money or property by means of untrue statements of material facts and omissions or engaged in transactions, practices and courses of business to operate as a fraud or deceit upon purchasers and prospective purchasers through interstate commerce in violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act.

Count IV states that Burmaster, Hayter, and BIH, through interstate commerce, obtained money or property by means of untrue statements of material facts and omissions or engaged in transactions, practices and courses of business to operate as a fraud or deceit upon purchasers and prospective purchasers in

violation of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5.

Count V states that BIH used interstate commerce to offer or sell securities while knowingly, willfully, or recklessly employing devices, schemes, or artifices to defraud, and made untrue statements of material facts and omissions or engaged in transactions, practices and courses of business to operate as a fraud or deceit upon purchasers and prospective purchasers in violation of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5. Count V further states that Burmaster and Hayter knowingly, willfully, or recklessly aided and abetted BIH in commission of those violations.

Upon review, the Court finds that the facts in the Complaint establish that the Commission is entitled to a default judgment against Burmaster on all five counts.

### III.

The Commission seeks declaratory relief that Burmaster violated federal securities laws, a permanent injunction against Burmaster from further violations, a disgorgement of all ill-gotten gains, including prejudgment interest, civil monetary penalties, an order barring Burmaster from participating in any future penny stock offerings, and the retention of jurisdiction. (Doc. #1.) Burmaster has offered multiple objections to the Commission's requested relief. (Doc. #204.)

**A. Burmaster's Objection to the Delay in Recommending a Civil Penalty**

The Commission seeks maximum civil money penalties against Burmaster pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act. However, the Commission does not yet have approval to recommend a specific penalty amount. Accordingly, the Commission requests 120 days from the date default judgment is entered to file a motion recommending a specific penalty amount. Burmaster objects to the delay, and argues that the Commission has waived its right to seek any penalty by not specifying an amount at this time. While the Court is sympathetic to Burmaster's desire to bring this case to a speedy conclusion, it is unaware of any legal authority supporting Burmaster's waiver argument. Accordingly, the Court will grant the Commission sixty days from the date of entry this Order to file a motion recommending a specific penalty amount.

**B. Burmaster's Objections to Injunctive Relief**

Burmaster challenges the Commission's requested injunctive relief on two grounds. First, Burmaster notes that the Commission seeks injunctions against future securities law violations applicable to both Burmaster and Burmaster's "agents, servants, employees, attorneys, and all persons in active concert or participation with them." Burmaster argues that the inclusion of individuals other than himself renders the requested injunction impermissibly vague. The Court disagrees. The injunctive

language complained of by Burmaster closely tracks the language of Fed. R. Civ. P. 65(d), and Burmaster does not cite-and the Court is unaware of—any legal authority holding that such language is impermissibly vague.

Second, Burmaster argues that the injunctions sought by the Commission are the type of "obey the law" injunctions prohibited by the Eleventh Circuit in SEC v. Goble, 682 F.3d 934, 949-52 (11th Cir. 2012). While Goble cautions that "obey the law" injunctions are generally impermissible, the court in Goble explained that in the context of a SEC civil enforcement action "a broad, but properly drafted injunction, which largely uses the statutory or regulatory language may satisfy the specificity requirement of Rule 65(d) so long as it clearly lets the defendant know what he is ordered to do or not do." Id. at 952. The Commission's proposed injunctions clearly set forth the acts which Burmaster is ordered not to do. Accordingly, the Court finds that Commission's proposed injunctions comport with Fed. R. Civ. P. 65(d) and, therefore, the Court will grant the injunctive relief requested by the Commission.

**C. Burmaster's Objections to Disgorgement of Ill-Gotten Gains**

Burmaster argues that the Commission is not entitled to disgorgement of ill-gotten gains because (i) the amount of ill-gotten gains is not established by the Complaint; (ii) the Commission has not shown that Burmaster actually received the ill-

gotten gains; and (iii) Burmaster cannot pay the amounts to be disgorged.  However, none of these objections warrant denial of the Commission's requested relief.

"In order to be entitled to disgorgement, the SEC needs to produce only a reasonable approximation of the defendant's ill-gotten gains, and exactitude is not a requirement." SEC v. Monterosso, No. 13-10341, 2014 WL 2922670, at *8 (11th Cir. June 30, 2014) (quotation omitted).  "Once the SEC has produced a reasonable approximation of the defendant's unlawfully acquired assets, the burden shifts to the defendant to demonstrate the SEC's estimate is not reasonable." Id.  Additionally, "it is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct." SEC v. Calvo, 378 F.3d 1211, 1215 (11th Cir. 2004).  Thus, when parties act in concert to violate securities law, each party is jointly and severally liable for disgorgement of ill-gotten gains even if a particular party did not receive the proceeds. Monterosso, 2014 WL 2922670, at *8 ("[A] personal financial benefit is not a prerequisite for joint and several liability.") (quoting SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1098 (9th Cir. 2010)).

The Commission requests disgorgement of ill-gotten gains in the amount of $1,137,106 plus interest.  The Commission arrived

at this figure via an accountant's review of brokerage account records, wire transfers, and bank account statements from the companies involved in the pump-and-dump scheme. (Doc. #67-50.) Burmaster does not contest the accuracy of the Commission's figure or propose his own more accurate calculation. Instead, he states that the Commission's calculation is "new and surprising" information that the Court cannot accept as true because it is not contained in the Complaint.

As an initial matter, the Commission's calculation of ill-gotten gains is not new information, as the Commission first provided it more than two years ago in an affidavit filed in connection with its motion for summary judgment against Burmaster and others. (Id.) Nor is the Commission's calculation at all surprising given the facts stated in the Complaint. While Burmaster is technically correct that the exact amount requested by the Commission, $1,137,106, does not appear in the Complaint, the Complaint does state that the scheme perpetrated by Burmaster and others dumped more than 93 million shares of BIH stock for a total sales price of approximately $1.1 million. The Commission's affidavit simply provides the exact figures underlying these approximations. (Id.) Accordingly, as Burmaster has admitted to approximately $1.1 million in ill-gotten gains, he cannot plausibly argue that $1,137,106 is not a "reasonable approximation" of the ill-gotten gains in this case.

Likewise, the facts set out in the Complaint foreclose Burmaster's argument that he cannot be ordered to disgorge ill-gotten gains that he did not receive. By virtue of his default, Burmaster has admitted that he was an integral part of a pump-and-dump scheme in which he and Hayter used BIH, North Bay, and other companies to dump more than $1 million of BIH stock on the unwitting investing public. These facts are more than sufficient to support a finding that Burmaster is jointly and severally liable with BIH and North Bay. Accordingly, Burmaster's contentions that he did not personally receive the ill-gotten gains, even if true, do not impact the Commission's right to full disgorgement from Burmaster via joint and several liability. See Monterosso, 2014 WL 2922670, at *8.

Burmaster's final argument concerning ill-gotten gains is that the Court must take into account his inability to pay before ordering disgorgement. While Burmaster is correct that the Eleventh Circuit has held that the ability to pay may be one factor considered in the imposition of a *civil penalty* for securities law violations, disgorgement is not a civil penalty and the law is clear that the Commission is entitled to disgorgement of all ill-gotten gains irrespective of a defendant's ability to pay. SEC v. Warren, 534 F.3d 1368, 1370 (11th Cir. 2008). Indeed, "[a] contrary rule would allow con artists to escape disgorgement liability by spending their ill-gotten gains—an absurd result."

Id. at 1370 n.2. Accordingly, the Court will not reduce the amount of disgorgement on account of Burmaster's alleged inability to pay.

**D.  Burmaster's Objections to a Penny Stock Bar**

Finally, Burmaster argues that the facts established by the Complaint do not warrant the penny stock bar sought by the Commission.  The Exchange Act authorizes a court to order a penny stock bar "against any person participating in, or, at the time of the alleged misconduct, who was participating in, an offering of penny stock, conditionally or unconditionally, and permanently or for such period of time as the court shall determine."  15 U.S.C. § 78u(d)(6)(A).  The Complaint establishes that BIH was a penny stock and that Burmaster committed Exchange Act violations involving BIH stock.  Accordingly, the Complaint establishes facts sufficient to impose a penny stock bar on Burmaster.

In sum, Burmaster's objections do not provide any basis to deny the Commission its requested relief.  Accordingly, it is hereby

**ORDERED:**

Plaintiff's Motion for Default Judgment of Permanent Injunction and Other Relief Against Wayne A. Burmaster, Jr. (Doc. #202) is **GRANTED.**  Default Judgment is entered in favor of

Plaintiff and against Defendant Wayne A. Burmaster as to Counts I-V as follows:

1. Wayne A. Burmaster, Jr. and Burmaster's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 5 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e, by, directly or indirectly, in the absence of any applicable exemption:

    a) unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

    b) unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

    c) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act , 15 U.S.C. § 77h.

2. A separate Injunction shall issue as follows:

    a) Wayne A. Burmaster, Jr. and Burmaster's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 17(a)(1)-(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1)-(3), in the offer or sale of any security by the use of any means or instruments of transportation or communication in

interstate commerce or by use of the mails, directly or indirectly:

1) to employ any device, scheme, or artifice to defraud;

2) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii) making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company.

b) Burmaster, Jr. and Burmaster's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

1) to employ any device, scheme, or artifice to defraud;

2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made,

not misleading; or

3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii) making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company.

c) Burmaster is jointly and severally liable with Defendants BIH Corporation and North Bay South Corporation for disgorgement of $1,137,106, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $212,052, for a total of $1,349,158 (with any payments made by the other Defendants or Relief Defendants proportionally reducing Burmaster's total disgorgement and prejudgment amount). Burmaster shall satisfy this obligation by paying $1,349,158 to the Securities and Exchange Commission within 14 days after entry of this Judgment.

1) Burmaster may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Burmaster may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to Enterprise Services Center, Accounts Receivable Branch, 6500 South MacArthur Boulevard, Oklahoma City, OK 73169 and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Burmaster as a Defendant in this action; and specifying that payment is made pursuant to this Judgment.

        2) Burmaster shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Burmaster relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Burmaster. The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the Fund subject to the Court's approval. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Judgment to the United States Treasury. The Commission may enforce the Court's judgment for disgorgement and prejudgment interest, by moving for civil contempt (or through other collection procedures authorized by law) at any time after fourteen days following entry of the Judgment. Burmaster shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

    d) Burmaster is permanently barred from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock. A penny stock is any equity security that has a price of less than five dollars, except as provided in Rule 3a51-1 under the Exchange Act, 17 C.F.R. § 240.3a51-1.

3. Burmaster shall pay a civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d). The amount of civil penalty shall be determined by the Court upon motion of the Commission that the Commission must file within 60 days of the entry of this Order.

4. The Court will retain jurisdiction over the enforcement of the judgment upon entry.

    The Clerk shall withhold the entry of judgment in favor of the Commission and against Defendant Wayne A. Burmaster, Jr.

pending submission of a motion by the Commission concerning the amount of civil penalties.

**DONE and ORDERED** at Fort Myers, Florida, this ___14th___ day of July, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record
Wayne A. Burmaster