UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 2:10-CV-577-FTM-29 DNF

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BIH CORPORATION, | ) |
| WAYNE A. BURMASTER, JR., | ) |
| EDWARD W. HAYTER, | ) |
| NORTH BAY SOUTH CORPORATION, | ) |
| BIMINI REEF REAL ESTATE, INC., | ) |
| RIVERVIEW CAPITAL INC., | ) |
| CHRISTOPHER L. ASTROM, and | ) |
| DAMIAN B. GUTHRIE, | ) |
| Defendants, | ) |
| | ) |
| BARON INTERNATIONAL, INC., | ) |
| THE CADDO CORPORATION, and | ) |
| BEAVER CREEK FINANCIAL CORPORATION, | ) |
| | ) |
| Relief Defendants. | ) |
| | ) |

PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MOTION AND MEMORANDUM OF LAW FOR ENTRY OF FINAL JUDGMENT
OF PERMANENT INJUNCTION AND OTHER RELIEF
<u>AGAINST DEFENDANT EDWARD W. HAYTER</u>

## I. INTRODUCTION

Plaintiff Securities and Exchange Commission, pursuant to Federal Rule of Civil Procedure 58, respectfully moves the Court for entry of Final Judgment of Permanent Injunction and Other Relief against Defendant Edward W. Hayter. In particular, the Commission seeks an order: (i) permanently enjoining Hayter from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"); (ii) holding Hayter jointly and severally liable with Defendants Wayne A. Burmaster, BIH Corporation and North Bay South Corporation for $1,121,051 of disgorgement plus $222,522 of prejudgment interest; (iii) imposing a third-tier pecuniary gain civil penalty of $484,032 against Hayter; and (iv) entering a penny stock bar against Hayter.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Commission filed its five-count Complaint on September 20, 2010 to, among other things, restrain and enjoin Hayter and others from further violating the federal securities laws in connection with a pump-and-dump scheme, which involved the unregistered offer and sale of securities of BIH Corporation. The Complaint also sought to, among other things, require Hayter to pay disgorgement with prejudgment interest and a civil money penalty, and bar him from participating in any penny stock offering. [*See* DE 1].

The Commission tried its claims against Hayter to a jury before this Court from August 5-8, 2014. [*See* DE 220-221 & 228]. On August 8, 2014, the jury returned a verdict of liability against Hayter on all of the Commission's claims against him. [DE 229]. The jury found Hayter violated: (i) Sections 5(a) and 5(c) of the Securities Act; (ii) Section 17(a)(1) of the Securities Act; (iii) Sections 17(a)(2) and 17(a)(3) of the Securities Act; and (iv) Section

10(b) and Rule 10b-5 of the Exchange Act. [*See id.* at 1-7]. The jury also found Hayter aided and abetted BIH's violations of Section 10(b) and Rule 10b-5 of the Exchange Act. [*See id.* at 7-8].

### III. MEMORANDUM OF LAW

Based on the jury's verdict of liability against Hayter and the record compiled at trial, the Commission seeks an order: (i) permanently enjoining Hayter from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act; (ii) holding Hayter jointly and severally liable with Burmaster, BIH and North Bay for $1,121,051 of disgorgement plus $222,522 of prejudgment interest; (iii) imposing a third-tier pecuniary gain civil penalty of $484,032 against Hayter; and (iv) entering a penny stock bar against Hayter.

#### A.    Permanent Injunctive Relief is Warranted Against Hayter.

The Court should enter a permanent injunction against Hayter barring him from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act, and from aiding and abetting violations of Section 10(b) and Rule 10b-5 of the Exchange Act.

The Commission appears in this matter "not as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the securities laws." *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). We, therefore, do not have to show irreparable injury or a balance of the equities in our favor. *See, e.g., SEC v. Unifund SAL*, 910 F.2d 1028, 1036 (2d Cir. 1990). The Commission is entitled to a permanent injunction when it establishes (i) the defendant has violated the securities laws,

and (ii) a reasonable likelihood the defendant will repeat the violations. *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004); *SEC v. Unique Financial Concepts*, 196 F.3d 1195 at 1199 n.2 (11th Cir. 1999). In determining whether a defendant is reasonably likely to continue to violate the securities laws, courts consider the following factors: (i) the egregiousness of the actions; (ii) the isolated or recurrent nature of the violations; (iii) the degree of scienter involved; (iv) the defendant's recognition of the wrongful nature of his conduct; (v) the sincerity of the defendant's assurances against future violations; and (vi) the likelihood the defendant's occupation will present opportunities for future violations. *Calvo*, 378 F.3d at 1216.[1]

All of these factors justify the Court's entering a permanent injunction against Hayter. As discussed below, Hayter's conduct was egregious and he acted with a high degree of scienter. In addition, Hayter's violations were recurrent. Indeed, he arranged for numerous issuances of unregistered shares and disseminated numerous false press releases from at least March 2008 through April 2009. With regard to the fourth and fifth factors, Hayter has never admitted he has done anything wrong and has expressed no remorse. He has made no assurances, let alone sincere ones, that he will not violate the securities laws in the future. With regard to the sixth factor, Hayter's occupation as an investment banker presents opportunities for future violations. Given the existence of a number of these factors, the only way to assure Hayter does not repeat violations of the securities laws is for the Court to enter a permanent injunction against him.

---

[1] As the Second Circuit observed: "Certainly, the commission of past illegal conduct is *highly suggestive* of the likelihood of future violations . . . [and] "appellate courts have repeatedly cautioned that cessation of illegal activity does not ipso facto justify the denial of an injunction." *Management Dynamics*, 515 F.2d at 807 (emphasis added).

3

Based on the foregoing, the Court should enter the attached proposed order and final judgment as to Counts I-V enjoining Hayter from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act.[2]

### B. The Court Should Order Hayter to Disgorge His Ill-Gotten Gains and Pay Prejudgment Interest.

Disgorgement is designed both to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws. *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978); *see also SEC v. First City Financial Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103-1104 (2d Cir. 1972) ("The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable"). Where, as here, the fraud is pervasive, the Court should order the wrongdoer to disgorge all profits stemming from the scheme. *CFTC v. British Am. Commodity Options Corp.*, 788 F.2d 92, 93-94 (2d Cir. 1986), *cert. denied*, 479 U.S. 853 (1986).

The law does not require precision in determining the proper amount of disgorgement. Instead, the amount of disgorgement "need only be a reasonable approximation of profits causally connected to the violation." *SEC v. W. Anthony Huff, et al.*, 758 F. Supp. 2d 1288, 1359 (S.D. Fla. 2010), *aff'd*, 2012 WL 10862 (11th Cir. 2012) (citing *SEC v. K.W. Brown & Co., et al.*, 555 F.Supp.2d 1275, 1312 (S.D. Fla. 2007); *SEC v. First Jersey Securities*, 101 F.3d 1450, 1474-75 (2d Cir. 1996)). The wrongdoer, who has

---

[2] The language of the permanent injunction set forth in the attached proposed order and final judgment is consistent with the Eleventh Circuit's decision in *SEC v. Goble*, 682 F.3d 934 (11th Cir. 2012) because it is narrowly tailored and "specifically describe[s] the proscribed conduct within the four corners of the injunction." *Id.* at 952. In addition, the Commission notes the language is identical to the permanent injunctions the Court already has entered against Burmaster, BIH, North Bay, Bimini Reef, Riverview Capital, Astrom and Guthrie. [*See* DE 206 at 14-16; DE 24 at 2-3; DE 25 at 2-3; DE 121 at 4-5].

created the uncertainty through violations of the federal securities laws, bears the risk of uncertainty. *See First City*, 890 F.2d at 1232 (*citing SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983) (*en banc*)).[3]

Additionally, the Court should order Hayter to pay prejudgment interest on disgorgement, since he has enjoyed access to funds over a period of time as a result of his wrongdoing. Requiring Hayter to pay prejudgment interest is consistent with the equitable purposes of the remedy of disgorgement. *See SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1090 (D.N.J. 1996), *aff'd*, 124 F.3d 449 (3rd Cir. 1997).

Hayter also should be held jointly and severally liable for the total amount of the fraud. When two or more individuals or entities collaborate or have close relationships in engaging in violations of the securities laws, they may be held jointly and severally liable for the entire amount of the fraud. *SEC v. JT Wallenbrock & Associates, et al.*, 440 F.3d 1109, 1117 (9th Cir. 2006); *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997) (holding a defendant jointly and severally liable for disgorgement); *SEC v. Berger*, 244 F. Supp.2d 180 (S.D.N.Y. 2001) (defendant jointly and severally liable because he conceived fraud and controlled corporate defendant); *Brown*, 555 F. Supp. 2d at 1312 (holding all defendants jointly and severally liable for disgorgement); *SEC v. Whittemore*, 659 F.3d 1 (D.C. 2011). This remedy is particularly appropriate in cases like this one that involve violations of the registration provisions of Section 5 of the Securities Act, because but for these registration violations, there would not have been any sale proceeds. *SEC v. Olins*, 762

---

[3] "The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *First Jersey*, 101 F.3d at 1474-75.

F. Supp. 2d 1193, 1197 & 1200 (N.D. Cal. 2011) (holding defendants jointly and severally liable in case involving violations of Section 5 of the Securities Act for all gross proceeds received from unlawful sales of stock).[4]

The Commission established Hayter received funds from defrauded investors. In support of its request for disgorgement, the Commission refers to evidence at trial showing that from March 2008 through April 2009, Hayter and the other defendants illegally sold a total of 89.8 million shares of BIH for $1,121,051. [*See* Tr. Vol. II at 244-45; *see also* PX 180 at PDX 311; *see also generally* PX 2c-2, 66, 143 & 158].[5] Hence, the Commission asks the Court to hold Hayter jointly and severally liable with Burmaster, BIH and North Bay in the amount of $1,121,051. [*See* DE 121 & 206].

Hayter and the other defendants have had $1,121,051 of investors' funds since at least April 2009. The Commission, therefore, asks the Court to award prejudgment interest on this amount. The Commission has calculated prejudgment interest in accordance with the delinquent tax rate as established by the Internal Revenue Service, IRC § 6621(a)(2), and assessed on a quarterly basis, from April 2009 through the end of August 2014. [*See* attached Exhibit 1]. This rate of interest "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud." *First Jersey*, 101 F.3d at 1476. Application of this rate results in a prejudgment interest total of $222,522. The Court should add prejudgment interest to

---

[4] Once the Commission presents evidence reasonably approximating the amount of a defendant's ill-gotten gains, the burden of proof shifts to the defendant. *See First City*, 890 F.2d at 1232; *see also Hughes Capital*, 917 F. Supp. at 1085, *aff'd*, 124 F.3d 449 (3d Cir. 1997). The defendant is then "obliged clearly to demonstrate that the disgorgement figure [is] not a reasonable approximation." *First City*, 890 F.2d at 1232.

[5] We cite references to our trial exhibits as "PX ___ at ___." In addition, the transcripts for each day of the trial are contained in four volumes. Therefore, we cite references to the transcripts as "Tr. Vol. ___ at ___."

disgorgement in determining the total amount Hayter should disgorge. In doing so, the total disgorgement and prejudgment interest for which the Court should hold Hayter jointly and severally liable with Burmaster, BIH and North Bay is $1,343,573. [*See* DE 121 & 206].

### C. The Court Should Order Hayter to Pay a Substantial Civil Penalty.

The Court should impose a third-tier pecuniary gain civil penalty of $484,032 against Hayter pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act, to punish him for his fraudulent conduct and to deter others from committing violations of the securities laws. As demonstrated at trial, Hayter profited from the fraudulent scheme in this case in the amount of $484,032, which represents his pecuniary gain. [*See* Tr. Vol. II at 246; *see also* PX 108, 109 & 180 at PDX 314].

Monetary penalties serve the dual functions of punishment and deterrence. *See Brown*, 555 F. Supp. 2d at 1314 (quoting *SEC v. Lybrand*, 281 F. Supp. 2d 726, 729-30 (S.D.N.Y. 2003); *Huff*, 758 F. Supp. 2d at 1364-66, *aff'd*, 455 Fed. App'x 882 (11th Cir. 2012) (trial verdict affirmed in all respects, including $600,000 civil penalty against individual defendant). As *Lybrand* explained:

> A monetary penalty is designed to serve as a deterrent against securities law violations. As set forth in H.R. Report No. 616--the Report of the Committee on Energy and Commerce of the U.S. House of Representatives on the Remedy Act,
>
> > *[T]he money penalties proposed in this legislation are needed to provide financial disincentives to securities law violations* other than insider trading . . . Disgorgement merely requires the return of wrongfully obtained profits; *it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud* . . . . The Committee therefore concluded that authority to seek or *impose substantial money penalties*, in addition to the disgorgement of profits, *is necessary for the deterrence of securities law violations* that otherwise

7

> may provide great financial returns to the violator. [*Lybrand*, 281 F. Supp. 2d at 729-30 (emphasis added and citations omitted)].

*See also SEC v. Henke*, 275 F.Supp.2d 1075, 1086 (N.D. Cal. 2003) (where maximum civil penalties were imposed despite the fact that class of investors recovered nine-tenths of claimed losses because "*civil penalties sought by the SEC may nevertheless serve as a deterrent to others who might otherwise engage in violations of securities law*") (emphasis added). Based on the dual public policy function of punishment and deterrence, the Commission submits a substantial penalty is necessary and appropriate to financially punish Hayter for his unlawful and fraudulent activities and to deter others from engaging in violations of the federal securities laws.

The Commission seeks a $484,032 civil money penalty against Hayter pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act. The amount of the penalty is to be determined by the court "in light of the facts and circumstances," but the penalty for any one violation may not exceed the higher of (i) "the gross amount of pecuniary gain" or (ii) the amount listed in the applicable "penalty tier." Both the Securities Act and the Exchange Act establish the same three penalty tiers: Tier I for violations not involving fraud; Tier II for violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and Tier III for violations satisfying the Tier II requirements but that additionally "resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3)(B); *SEC v. Big Apple Consulting, USA, Inc.*, 2013 WL 1352166 at *3-4 (M.D. Fla. Mar. 29, 2013); *SEC v. Pitters*, 2010 WL 1413194 at *4-5 (S.D. Fla. Mar. 5, 2010); *SEC v. Phoenix Telecom LLC*, 231 F. Supp. 2d 1223, 1225 (N.D. Ga. 2001). The maximum penalty for each violation

(applicable unless the defendant's pecuniary gain is higher) has been adjusted upward over time to reflect inflation. For violations during the period at issue in this case, the maximums under both the Securities Act and the Exchange Act are set out at 17 C.F.R. § 201.1003, 17 C.F.R. Pt. 201, Subpt. E, Tbl. III.[6] The maximum per-violation penalties under both statutes for Hayter are: $6,500 for a Tier I violation; $65,000 for a Tier II violation; and $130,000 for a Tier III violation. Thus, the Court may impose a penalty of up to $130,000 on Hayter for *each* of his numerous violations, or an amount equal to Hayter's pecuniary gain of $484,032. *See SEC v. KS Advisors, Inc.*, 2006 WL 288227 at * 3 (M.D. Fla. Feb. 6, 2006) (where this Court found it was "appropriate" to punish two defendants by imposing pecuniary gain penalties of $1,180,262 and $638,742, respectively).

After considering all of the relevant factors, the Court should impose a substantial penalty against Hayter because his misconduct was egregious, involved a high degree of scienter, was recurrent, and caused investors to sustain substantial losses.[7] As *Huff* explained, this Court may consider a number of factors in determining the appropriate amount for a civil penalty, including:

> (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

---

[6] The statutory adjustment for inflation has increased the penalty amount by 30% for conduct occurring after February 14, 2005 through March 3, 2009. *See* 17 C.F.R. 201.1003, 17 C.F.R. Pt. 201, Subpt. E, Tbl. III. The conduct at issue in this case occurred between 2008 through at least March 2009. [*See* DE 1, ¶ 1]. Hence, the 30% adjustment for inflation is the appropriate rate for this case.

[7] Additionally, Hayter has not admitted he has done anything wrong and he did not cooperate or act honestly with the Commission.

*Huff*, 758 F. Supp. 2d at 1364, citing *SEC v. Abellan*, 674 F. Supp. 2d 1213, 1222 (W.D.Wash. 2009) (quoting *Lybrand*, 281 F.Supp.2d at 730 (collecting cases)). Application of these factors to the facts in this case drastically tilts the scales toward the conclusion the Court should impose a substantial civil penalty against Hayter.

As shown at trial, Hayter's scheme was egregious and involved a high degree of scienter. For instance, Hayter carried out a pump-and-dump scheme involving the unregistered sale of BIH's stock. The scheme drove up the price of the stock through Hayter's dissemination of false and misleading press releases and placing false information on BIH's website regarding, among other things, the identity of the individuals directing BIH's affairs, BIH's operations and business relationships, and BIH's stock and dividend payments. In fact, in order to mask his control over BIH, Hayter created a fictitious *alter ego*, who purportedly served as BIH's president and chief executive officer. [*See* Tr. Vol. I at 45, 77-80, 80-82; Tr. Vol. III at 13-25; *see also* PX 11A, 16A, 77, 78, 78B, 152 & 153]. Additionally, Hayter made numerous material misrepresentations in the form of fraudulent press releases. [*See, e.g.*, Tr. Vol. I at 124:3-6, 129-130, 137-38, 145-46, 150-51; Tr. Vol. II at 12-18, 41-45, 72-73, 205:1-16; *see also, e.g.*, PX 55, 78B, 152-155]. As a result of these false and misleading press releases, Hayter was able to dramatically increase the price and trading volume of BIH's stock. [*See* Tr. Vol. II at 251-55; *see also* PX 1, 152-155, 179 & 180 at PDX 318].

As further demonstrated at trial, Hayter's scheme was recurrent and created substantial losses. From 2008 through March 2009, Hayter, along with Burmaster, engaged in fraud and sold tens of millions of unregistered shares of BIH stock to various companies.

No registration statement was filed or in effect with the Commission in connection with the sales of these shares, and the shares were not subject to any exemption from registration. [*See* PX 156]. BIH received little or no consideration for issuing the shares to those companies. In turn, the companies dumped more than $1 million of BIH stock on investors at inflated prices. The companies retained a portion of the illegally obtained sales proceeds and sent the remaining funds to entities Hayter controlled. [*See* Tr. Vol. II at 82-84, 96-98, 105-06, 116-18, 244-45; Tr. Vol. III at 8-9, 26-27; *see also* PX 2c-2, 27, 66, 108, 109, 143, 144, 157, 158 & 180 at PDX 311]. Hayter received a total of $484,032 in sales proceeds. [*See* Tr. Vol. II at 246; *see also* PX 108, 109 & 180 at PDX 314].

In sum, Hayter's misconduct was egregious and recurrent, involved a high degree of scienter, created substantial losses, and violated five separate provisions of the federal securities laws. The Court is more than justified in imposing a substantial penalty against Hayter. Accordingly, to punish him for this misconduct and to deter others from engaging in similar misconduct, the Court should impose a third-tier pecuniary gain penalty of $484,032.

### D. The Court Should Impose a Permanent Penny Stock Bar Against Hayter.

In order to protect investors from further fraudulent schemes by Hayter, the Court should impose a permanent penny stock bar against him. Section 20(g) of the Securities Act and Section 21(d)(6) of the Exchange Act authorize district courts to bar individuals from "participating in an offering of penny stock, conditionally or unconditionally, and permanently or for such period of time as the court shall determine." 15 U.S.C. §§ 77t(g)(1) & 78u(d)(6)(A). The Court can order a penny stock bar against any person who violates the Securities Act or Exchange Act who was "engaging in activities with a[n] . . . issuer for

purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of, any penny stock." 15 U.S.C. §§ 77t(g)(2) & 78u(d)(6)(B).

Imposition of a permanent penny stock bar is warranted against Hayter because he masterminded a fraudulent scheme involving the unregistered sale of BIH's stock. As the Commission demonstrated at trial, BIH was a holding company trading on the over-the-counter market ("OTC") as an unregistered penny stock. [*See* Tr. Vol. I at 44 & 122; Tr. Vol. II at 19; *see also* PX 11A & 156]. The stock qualified as a penny stock because, among other things, it was an equity security trading below five dollars per share at all pertinent times, and its issuer (BIH) did not have net tangible assets and average revenue in excess of the thresholds set forth in Exchange Act Rule 3a51-1(g). [*See* Tr. Vol. I at 55-57, 122-23; *see also* PX 1]. Hayter engaged in activities with an issuer (BIH) for the purpose of issuing, trading or inducing the purchase or sale of a penny stock. As noted above, Hayter:

- Implemented a pump-and-dump scheme involving the unregistered sales of BIH securities [*See* Tr. Vol. I at 45, 77-80, 80-82, 124:3-6, 129-130, 137-38, 145-46, 150-51; Tr. Vol. II at 12-18, 41-45, 72-73, 205:1-16; Tr. Vol. III at 13-25; *see also* PX 11A, 16A, 55, 77, 78, 78B, & 152-156];

- Illegally distributed BIH's stock and then dumped more than $1 million of the stock on unwitting investors [*See* Tr. Vol. II at 82-84, 96-98, 105-06, 116-18, 244-45; Tr. Vol. III at 8-9, 26-27; *see also* PX 2c-2, 27, 66, 108, 109, 143, 144, 157, 158 & 180 at PDX 311];

- Through the scheme, caused BIH's stock price to increase markedly [*See* Tr. Vol. II at 251-55; *see also* PX 1, 152-155, 179 & 180 at PDX 318]; and

- Received $484,032 of the proceeds from the sales of BIH stock [*See* Tr. Vol. II at 246; *see also* PX 108, 109 & 180 at PDX 314].

Based on Hayter's egregious misconduct, it is in the public interest for the Court to impose a permanent penny stock bar against him. *See SEC v. Sky Way Global*, 2010 WL

3276461 (M.D. Fla. 2010) (court imposed permanent penny stock bar); *SEC v. K&L Intern. Enterprises, Inc.*, 2009 WL 3157674 at *2 (M.D. Fla. 2009) (after *prima facie* showing defendants violated Section 5, court imposed a penny stock bar); *SEC v. Converge Global, Inc.*, 2006 WL 907567 at *5 (S.D. Fla. March 10, 2006) (in a case involving false press releases and violations of Section 10(b) and Rule 10b-5 of the Exchange Act, court imposed a permanent penny stock bar). In addition, the Court already has imposed a penny stock bar on Burmaster for engaging in substantially the same activities as Hayter. [*See* DE 206]. Accordingly, based on Hayter's violations of Sections 5(a), 5(c) and 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act, and aiding and abetting BIH's violations of Section 10(b) and Rule 10b-5 of the Exchange Act, the Court should impose a permanent penny stock bar against him.

### IV. CONCLUSION

Based on the foregoing, the Commission respectfully asks the Court to enter the requested relief. A proposed order and final judgment is submitted herewith.

Respectfully submitted,

September 9, 2014
By: s/Christopher E. Martin
Christopher E. Martin
Senior Trial Counsel
martinc@sec.gov
Arizona Bar No. 018486
Direct Dial No.: (305) 982-6386

Patrick R. Costello
Senior Trial Counsel
costellop@sec.gov
Florida Bar No. 75034
Direct Dial No.: (305) 982-6380

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mark David Hunter, Esq.
Leser Hunter Taubman & Taubman, PLLC
255 University Drive
Coral Gables, FL 33134
Tel: (305) 629-8816
Fax: (305) 629-8877
*Counsel for Defendants Bimini Reef Real Estate, Inc.,*
*Riverview Capital Inc., Christopher L. Astrom, and Damian B. Guthrie*

and that on September 9, 2014, I served the foregoing document and the notice of electronic filing by U.S. Mail to the following non-CM/ECF participants:

Edward Hayter, *pro se*
2167 East 21st Street, #103
Brooklyn, NY 11229

Wayne Burmaster, *pro se*
88 Moffitt Street
Staten Island, NY 10312

s/Christopher E. Martin
Christopher Martin