UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 2:10-CV-577-FTM-29 DNF

SECURITIES AND EXCHANGE COMMISSION, )
)
                      Plaintiff, )
)
v. )
)
BIH CORPORATION, )
WAYNE A. BURMASTER, JR., )
EDWARD W. HAYTER, )
NORTH BAY SOUTH CORPORATION, )
BIMINI REEF REAL ESTATE, INC., )
RIVERVIEW CAPITAL INC., )
CHRISTOPHER L. ASTROM, and )
DAMIAN B. GUTHRIE, )
                      Defendants, )
)
BARON INTERNATIONAL, INC., )
THE CADDO CORPORATION, and )
BEAVER CREEK FINANCIAL CORPORATION, )
)
                      Relief Defendants. )
_____)

PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MOTION FOR FINAL JUDGMENT SETTING CIVIL MONEY PENALTY
AS TO DEFENDANT WAYNE A. BURMASTER, JR.

## I. INTRODUCTION

Plaintiff Securities and Exchange Commission moves the Court for entry of Final Judgment Setting Civil Money Penalty as to Defendant Wayne A. Burmaster, Jr.[1] Based on Burmaster's fraudulent conduct and to deter others from engaging in similar misconduct, the Court should impose a $130,000 civil penalty against Burmaster.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Commission filed its five-count Complaint on September 20, 2010 to, among other things, restrain and enjoin Burmaster and others from further violating the federal securities laws in connection with a pump-and-dump scheme, which involved the unregistered offer and sale of securities of Defendant BIH Corporation. The Complaint also sought to, among other things, require Burmaster to pay disgorgement with prejudgment interest and a civil money penalty, and bar him from participating in any penny stock offering. [*See* DE 1].

By Court Orders (DE 170 & DE 175), the parties were to meet and confer to prepare the Final Joint Pretrial Statement. Burmaster, however, failed to attend the meeting or participate. [DE 178]. The Court gave him an opportunity to show cause why sanctions should not be imposed for his failure to cooperate. The Court warned Burmaster his failure to show cause would result in striking his amended answer and remaining affirmative defenses. [DE 180].

Burmaster did not respond to the Court's Order to Show Cause. On March 3, 2014, the Commission notified the Court of Burmaster's failure to show cause. [DE 182].

---

[1] The amount of civil penalty the Court should impose is the sole remaining issue as to Burmaster. [*See* DE 206].

1

Thereafter, the Court struck Burmaster's amended answer and remaining affirmative defenses. [DE 185]. After the Commission moved for entry of clerk's default against Burmaster, on April 4, 2014, the Magistrate granted the Commission's Motion, and several days later, the clerk entered default against Burmaster. [DE 185 & 199-200].

On May 2, 2014, the Commission filed a Motion for Default Judgment of Permanent Injunction and Other Relief Against Burmaster ("Motion for Default Judgment"). [DE 202]. In particular, the Commission sought an order: (i) entering judgment against Burmaster on Counts I through V of the Commission's Complaint; (ii) entering a permanent injunction enjoining Burmaster from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"); (iii) holding Burmaster jointly and severally liable with other Defendants for $1,137,106 of disgorgement and $212,052 of prejudgment interest; (iv) entering a penny stock bar against Burmaster pursuant to Section 20(g) of the Securities Act and Section 21(d)(6) of the Exchange Act; and (v) reserving jurisdiction for up to 120 days to allow the Commission to propose a specific civil money penalty amount Burmaster should pay. On May 20, 2014 Burmaster responded to the Motion for Default. [DE 204].

On July 14, 2014, the Court issued an Opinion and Order granting the Commission's Motion for Default Judgment and ordered, in pertinent part, the following relief: (i) judgment against Burmaster on Counts I through V of the Commission's Complaint; (ii) a permanent injunction enjoining Burmaster from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act; (iii) held Burmaster jointly and severally liable with Defendants BIH Corporation and North Bay South

Corporation for $1,137,106 of disgorgement and $212,052 of prejudgment interest (with any payments made by other defendants or relief defendants proportionally reducing Burmaster's total disgorgement amount); (iv) a permanent penny stock bar against Burmaster; and (v) a civil penalty pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act, with the amount of the penalty to be determined by the Court upon motion of the Commission, which motion the Commission had to file within 60 days of entry of the July 14, 2014 Order. [*See* DE 206 at 13-17].

### III. <u>MEMORANDUM OF LAW</u>

#### A. <u>The Court Should Impose a $130,000 Penalty Against Burmaster</u>

The Court should impose a $130,000 penalty against Burmaster pursuant to Section 20(d) of the Securities Act and 21(d) of the Exchange Act to punish him for his fraudulent conduct and to deter others. Monetary penalties serve the dual functions of punishment and deterrence. *SEC v. K.W. Brown & Co., et al.*, 555 F. Supp. 2d 1275, 1314 (S.D. Fla. 2007) (quoting *SEC v. Lybrand*, 281 F. Supp. 2d 726, 729–30 (S.D.N.Y. 2003); *SEC v. W. Anthony Huff, et al.*, 758 F. Supp. 2d 1288, 1364-66 (S.D. Fla. 2010), 455 Fed. App'x 882 (11th Cir. 2012) (trial verdict affirmed in all respects, including $600,000 civil penalty against individual defendant). As *Lybrand* explained:

> A monetary penalty is designed to serve as a deterrent against securities law violations. As set forth in H.R. Report No. 616--the Report of the Committee on Energy and Commerce of the U.S. House of Representatives on the Remedy Act,
>
>> *[T]he money penalties proposed in this legislation are needed to provide financial disincentives to securities law violations* other than insider trading . . . Disgorgement merely requires the return of wrongfully obtained profits; *it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud* . . . . The

> Committee therefore concluded that authority to seek or *impose substantial money penalties*, in addition to the disgorgement of profits, *is necessary for the deterrence of securities law violations* that otherwise may provide great financial returns to the violator. [*Lybrand*, 281 F. Supp. 2d at 729-30 (emphasis added and citations omitted)].

*See also SEC v. Henke*, 275 F. Supp. 2d 1075, 1086 (N.D. Cal. 2003) (where maximum civil penalties were imposed despite the fact that class of investors recovered nine-tenths of claimed losses because *"civil penalties sought by the SEC may nevertheless serve as a deterrent to others who might otherwise engage in violations of securities law"*) (emphasis added). Based on the dual public policy function of punishment and deterrence, the Commission submits a substantial penalty is necessary and appropriate to financially punish Burmaster for his unlawful and fraudulent activities and to deter others from engaging in violations of the federal securities laws.

The Commission seeks a $130,000 civil money penalty against Burmaster pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act. The amount of the penalty is to be determined by the Court "in light of the facts and circumstances," but the penalty for any one violation may not exceed the higher of (i) "the gross amount of pecuniary gain" or (ii) the amount listed in the applicable "penalty tier." Both the Securities Act and the Exchange Act establish the same three penalty tiers: Tier I for violations not involving fraud; Tier II for violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and Tier III for violations satisfying the Tier II requirements but that additionally "resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3)(B); *SEC v. Big Apple Consulting, USA, Inc.*, 2013 WL 1352166, *2-4 (M.D. Fla. Mar. 29, 2013); *SEC*

*v. Pitters*, 2010 WL 1413194, *4-5 (S.D. Fla. Mar. 5, 2010); *SEC v. Phoenix Telecom LLC*, 231 F. Supp. 2d 1223, 1225 (N.D. Ga. 2001). The maximum penalty for each violation (applicable unless the defendant's pecuniary gain is higher) has been adjusted upward over time to reflect inflation. For violations during the period at issue in this case, the maximums under both the Securities Act and the Exchange Act are set out at 17 C.F.R. § 201.1003, 17 C.F.R. Pt. 201, Subpt. E, Tbl. III.[2] The maximum per-violation penalties under both statutes for Burmaster are: $6,500 for a Tier I violation; $65,000 for a Tier II violation; and $130,000 for a Tier III violation. Thus, under the "Third Tier" statutory enhancement, the Court may impose a penalty of up to $130,000 on Burmaster for *each* of his numerous violations.

After considering all of the relevant factors, the Court should impose a substantial penalty against Burmaster because his misconduct was egregious, involved a high degree of scienter, was recurrent, and caused investors to sustain substantial losses.[3] As the court in *Huff* explained, this Court may consider a number of factors in determining the appropriate amount for a civil penalty, including:

> (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

---

[2] The statutory adjustment for inflation has increased the penalty amount by 30% for conduct occurring after February 14, 2005 through March 3, 2009. *See* 17 C.F.R. 201.1003, 17 C.F.R. Pt. 201, Subpt. E, Tbl. III. The conduct at issue in this case occurred between 2008 through at least March 2009. [*See* DE 1, ¶ 1]. Hence, the 30% adjustment for inflation is the appropriate rate for this case.

[3] Additionally, Burmaster has not admitted he has done anything wrong and there is no showing he cooperated or acted honestly with the authorities.

*Huff*, 758 F. Supp. 2d at 1364, citing to *SEC v. Abellan*, 674 F. Supp. 2d 1213, 1222 (W.D. Wash. 2009) (quoting *Lybrand*, 281 F. Supp. 2d at 730 (collecting cases)). Application of these factors to the uncontested facts in this case drastically tilts the scales towards the conclusion that the Court should impose a substantial civil penalty against Burmaster.[4]

As set forth in the Complaint, Burmaster's scheme was very egregious and involved a high degree of scienter. For instance, Burmaster and Edward W. Hayter carried out a pump-and-dump scheme involving the unregistered sale of BIH securities. The scheme drove up the price of BIH's stock through the dissemination of false and misleading press releases and placing false information on BIH's website regarding, among other things, the identity of the individuals directing BIH's affairs, BIH's operations and business relationships, and BIH's stock and dividend payments. In fact, in order to mask their control over BIH, Burmaster and Hayter created a fictitious *alter ego*, who purportedly served as BIH's president and chief executive officer. [*See e.g.*, DE 1, ¶ 1]. Additionally, Burmaster and Hayter made numerous material misrepresentations in the form of fraudulent press releases. [*See e.g.*, DE 206 at 4-5]. As a result of these false and misleading press releases, Burmaster and Hayter were able to dramatically increase the price and trading volume of BIH's stock. [*See id.* at 5].

As further set forth in the Complaint, Burmaster's scheme was recurrent and created substantial losses. From 2008 through March 2009, Burmaster and Hayter engaged in fraud

---

[4] The factual allegations of a complaint are deemed admitted by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *Nishimatsu Construction Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When a defendant fails to defend an action and a default has been entered, his liability for the claims alleged in the complaint, and the propriety of the relief sought, are deemed established. *See Buchanan*, 820 F.2d at 360; *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).

and sold tens of millions of unregistered shares of BIH stock to various companies. Burmaster controlled one of those companies, North Bay. No registration statement was filed or in effect with the Commission in connection with the sales of these shares, and the shares were not subject to any exemption from registration. BIH received little or no consideration for issuing the shares to those companies. In turn, the companies dumped more than $1 million of BIH stock on investors at inflated prices. The companies retained a portion of the illegally obtained sales proceeds and sent the remaining funds to entities Burmaster and Hayter controlled. [*See id.*]

In sum, Burmaster's misconduct was egregious and recurrent, involved a high degree of scienter, created substantial losses, and violated five separate provisions of the federal securities laws. The Court is more than justified in imposing a substantial penalty against Burmaster. Hence, to punish Burmaster for this misconduct and to deter others from engaging in similar misconduct, the Court should impose a $130,000 civil penalty against him.

## IV. **CONCLUSION**

Based on the foregoing, the Commission respectfully asks the Court to impose a $130,000 civil penalty against Burmaster. A proposed order and final judgment is submitted herewith.

Respectfully submitted,

September 9, 2014

By: s/Christopher E. Martin
Christopher E. Martin
Senior Trial Counsel
martinc@sec.gov
Arizona Bar No. 018486
Direct Dial No.: (305) 982-6386

Patrick R. Costello
Senior Trial Counsel
costellop@sec.gov
Florida Bar No. 75034
Direct Dial No.: (305) 982-6380

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mark David Hunter, Esq.
Leser Hunter Taubman & Taubman, PLLC
255 University Drive
Coral Gables, FL 33134
Tel: (305) 629-8816
Fax: (305) 629-8877
*Counsel for Defendants Bimini Reef Real Estate, Inc.,
Riverview Capital Inc., Christopher L. Astrom, and Damian B. Guthrie*

and that on September 9, 2014, I served the foregoing document and the notice of electronic filing by U.S. Mail to the following non-CM/ECF participants:

Edward Hayter, *pro se*
2167 East 21st Street, #103
Brooklyn, NY 11229

Wayne Burmaster, *pro se*
88 Moffitt Street
Staten Island, NY 10312

                                                           s/Christopher Martin
                                                           Christopher Martin