FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA** 14 OCT 16  PM 12: 44

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS, FLORIDA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) 2:10cv00577 JES/DNF ) |
| vs. | ) ) |
| BIH CORPORATION, et al, | ) RE:  Entry 238 ) |
| Defendants. | ) |

## EDWARD HAYTER'S OPPOSITION TO THE PLAINTIFF'S MOTION FOR JUDGMENT (ENTRY 238)

AND NOW COMES the Defendant, Edward Hayter ("Hayter"), files this, his opposition to the Plaintiff's request for judgment (Entry 238):

### I.    Any Disgorgement Should be Jointly and Severally Against All Defendants

The SEC apparently seeks to have an Order of disgorgement with respect to Hayter, Wayne Burmaster, BIH, and North Bay, a separate disgorgement against the relief defendants such as Baron International, and a third order of disgorgement against defendants Bimini Reef, Riverview Capital, Christopher Astrom, and Damon Guthrie.

However, this would result in the SEC receiving the same money multiple times for the same alleged scheme resulting in the same purported losses to the investors.  Either this Court should award one disgorgement, jointly and severally (but limited in the case of the relief defendants, such as Baron International, to the amount actually received).  If this Court determines a defendant should receive a limitation on the disgorgement amount, this limitation can be framed within the judgment but be otherwise jointly and severally.

1

Another alternative would be to proportion the disgorgement between the defendants based on their profit, etc.

However, to issue one disgorgement against four defendants, another disgorgement against four other defendants, and then a separate disgorgement against the relief defendants, would result in a windfall to the SEC—especially since none of the money in this case would be returned by the government to any investors. Simply put, it is all the same money and there is no justification for the SEC framing the judgment in a manner to create a windfall.

## II.     Hayter's Disgorgement Should be Limited to Profit

As the SEC readily admits, disgorgement is designed to deprive a wrongdoer of his purported gains. In this case, the SEC presented no evidence that Hayter received money personally for any proceeds of stock. The SEC also failed to show that Hayter even owned the entities that received the funds. The SEC simply showed that Hayter was an officer of the entities. Nevertheless, and assuming that this Court finds that to be sufficient evidence that Hayter personally received funds and benefits from the alleged fraud, the SEC is estopped from claiming that a gain was received in excess of the amount claimed at trial to have been received, i.e., $484,032. The SEC should be bound by their figures.

## III.     Internal Revenue Code 6621(a)(2) Should Not be Applied

The SEC cites a case from the United States Court of Appeals for the Second Circuit suggesting that Section 6621(a)(2) of the Internal Revenue Code should be used to determine prejudgment interest. However, nothing in the securities statutes that the SEC sued under authorizes this. The IRS rate is a penalty rate, three percentage points higher than short term interest bonds. If anything, the prime rate that the federal government assesses banks when money is borrowed from the Federal Reserve appears to be a more fair method to determine interest rather than something more than the government is entitled.

2

## IV.   The SEC seeks an excessive fine.

The SEC asks the Court to impose a penalty of $484,032 against Hayter, which is the amount of money transferred to two corporations that Hayter was an officer of. At trial, the SEC's accountant admitted that the money was "fungible" and that there was no real way of knowing if the money sent to the corporations was from the sale of stock. The SEC also provided no evidence at trial showing that Hayter maintained any ownership in the companies, only that he was an officer. No evidence at trial was presented that Hayter received money for his personal use, personal expenses, or for personal enrichment.

Nevertheless, assuming that the SEC's figure represents money Hayter received--$484,032, the SEC seeks disgorgement of over $1,121,051—nearly three times what was received which is a fine in and of itself. Now the SEC asks this Court to fine Hayter an additional $484,032, turning what was claimed to be an unjustified profit of less than half a million dollars to a total amount due of nearly two million dollars.

The statute created three tiers of fines. Tier I is for cases not involving fraud. Tier II is for fraud cases. However, the SEC asks this Court to impose penalties under Tier III where the fraud "resulted in substantial losses" to other persons. At trial, the SEC failed to produce a single investor who lost money. Moreover, the SEC admitted throughout this case that the stock was a "penny stock" trading for a fraction of a cent to a couple pennies. It is generally understood that penny stocks are high risk investments and most people gamble with a few hundred dollars to a couple thousand dollars, hardly something that would create a "substantial loss" to third parties.

The SEC did not make an allegation in its Complaint to pierce the corporate veil of the entities that received the money from the Astrom/Guthrie entities. The SEC never showed that Hayter personally received anything. Therefore, the SEC failed to prove that Hayter's personal

3

gain consists of $484,000. As such, the SEC is limited to receiving a penalty of either $50,000 if
this Court properly applies Tier II penalties or $100,000 if this Court erroneously finds that
investors faced a "substantial loss" under Tier III. 15 USC 77t(d)(2)(C).

Other cases show that the SEC's demand for $484,000 is unreasonable. For instance, in
*SEC v. Levine*, 2007 WL 1378462 (D.D.C May 8, 2007), the SEC sought $540,000, but the
Court refused and provided only $200,000. In the case of *SEC v. Platforms Wireless Int'l Corp.*,
1:06-CV-1260 (S.D. Cal. Aug. 6, 2007); Lit. Rel. No. 20230 (Aug. 8, 2007), involving false
press releases and disgorgement of over $2,000,000, the Court only awarded penalties of
$125,000 and $40,000. In *SEC v. Pittsford Capital Income Partners, LLC*, 06-CV-6353
(W.D.N.Y. Aug. 23, 2007); Lit Rel. No. 20256 (Aug. 27, 2007), over $15,000,000 was stolen
from investors, but the Court only awarded fines of $75,000 against the individuals.

Finally, this Court must take into consideration Hayter's financial situation. Whether this
Court orders disgorgement of $484,000 or $1,200,000, he will not be able to pay it. With the
disgorgement proposed by the SEC, at triple the amount Hayter-controlled entities received,
payment of a financial penalty would certainly not be possible. Hayter was forced to sell his
home after both of his banks declared his loan in default and initiated legal proceedings against
him. Hayter is overwhelmed with debt, with several credit cards in default and charged off. As
this Court knows, Hayter has been unable to pay his attorneys and both withdrew due to non-
payment. One attorney even alleged Hayter's check bounced. A large fine would be financially
burdensome and unlikely to be able to be paid. Simply put, these proceedings have already
devastated him.

4

## V.   No Injunction or Penny Stock Bar is Necessary or Warranted Against Hayter

The SEC notes in their motion that this alleged conduct occurred in 2008 and 2009, over five years ago.  No allegation has been raised that Hayter engaged in any purportedly fraudulent conduct since that time.  This alone defeats the need for an injunction.

The SEC simply states that Hayter's position as an "investment banker" creates opportunities for stock fraud.  This vague assertion is not sufficient to show that Hayter would commit additional alleged infractions.

The SEC cites Hayter's defense of this case as a failure to accept responsibility for the conduct in this case.  However, the SEC, this Court, and Hayter knows that the allegations that Cris Gallo did not exist—and that he does not exist—and that he was not president of this entity are factually frivolous.  To admit that Galo does not exist would have been a fraud upon the Court and Hayter was justified in holding steady to his firsthand knowledge as to Mr. Galo's involvement with the company.  The SEC received a legal windfall by having Mr. Galo assert his Fifth Amendment rights.  His doing so does not prove the SEC's case.  Rather, it makes it clear that he was involved.  It certainly was no case of identity fraud.

The real test, as contained in the case law cited by the SEC, is whether Hayter would engage in assisting in further puffery of press releases.  Through the declaration below, Hayter explains that the experience of this Court proceeding, which practically bankrupted him and ruined his reputation, created a deterrent and a desire to strictly comply with securities laws.

Therefore, the SEC failed to show that an injunction is warranted.

Finally, an injunction would infringe upon Hayter's constitutional rights, including his First Amendment rights, and impede his ability to engage in lawful business activities.  Specifically, an injunction would appear to prohibit Hayter from writing truthful news releases

5

about penny stock companies. An injunction may also constitute a taking of Hayter's property to the extent that he owns penny stocks or purchases a non-penny stock that eventually becomes a penny stock and then is unable to sell the assets.

The case of *SEC v. Freiberg*, 2007 WL 2692041 (D. Utah Sept. 12, 2007) presented a similar situation to this one. In that case, a defendant, Harvey Carmichael, challenged the SEC and proceeded to trial. The Court found Carmichael made false statements in press releases that inflated the price of the stock. However, the Court refused to issue an injunction, officer ban, or penny stock bar. The Court noted that five years passed between the alleged conduct and the end of the case. The Court stated, "There is no evidence he has participated in a violation since the events at issue here—although more than five years have passed."

The Court did not accept the SEC's argument that mere involvement in the investment community warranted a bar. The Court reasoned, "The mere fact that Mr. Carmichael has continued his involvement in the corporate arena does not justify an injunction."

The Court noted that the defendant "has not fully admitted to the wrongful nature of his conduct, he has expressed some regret about his involvement with parts of the transaction." The Court accepted that "he has indicated, with the benefit of hindsight, that he will not become involved" in misleading press releases.

The Court noted that the SEC did not show in the case that the defendant owned large quantities of stock and that the claim proven involved the fraudulent publicity claim.

Clearly, this case is similar in nature. There is no real reason to impose a permanent injunction or permanent penny stock bar. The evidence shows five years have passed without the need for such a measure.

## VI.   Conclusion

In conclusion, the SEC's demands are unreasonable and not justified under law.

Respectfully submitted,

Edward Hayter
2167 East 21st Street #103
Brooklyn, NY  11229

DEFENDANT

7

## DECLARATION

I, Edward Hayter, verify under the penalty for perjury that the following is true and correct. 28 USC 1746.

1.  My name is Edward Hayter.

2.  I have no desire to violate Securities laws and I profess to the Court that, in any business dealing in the future, I would thoroughly make sure that any activities strictly complied with the law.

3.  I would consult with an attorney and obtain an attorney opinion before I participated in any issuance of stock or accepted a penny stock share certificate.

4.  These proceedings cost me a large amount of money in legal fees.  It got to a point where I was unable to pay my attorneys and they both withdrew from the case.

5.  The case, including press releases issued by the SEC, have damaged my reputation and standing in the business community.

6.  These things make me desire to be diligent and thorough as to future business activities, especially if they involved penny stocks.

7.  If I engaged in additional ventures involving securities, I would verify information thoroughly before assisting with the dissemination of information.  In other words, I would not simply rely on what others told me.

8.  I defended this case primarily because many of the SEC's allegations were embellished and grossly exaggerated.  I knew that Cris Gallo owned the majority of the company and viewed the share records showing he owned the preferred shares that controlled the entity.  I met him.  I knew he was Wayne Burmaster's brother in law.  The SEC's characterization of Mr. Galo's testimony was unfair.  He never stated he collected cans for a living.  He clearly stated, under oath, that he worked for

a brokerage firm, on the floor of a stock exchange, and as a public adjuster. Mr. Galo was telling the SEC what he did years ago. This is clear from the transcript. I could not simply admit to the SEC's claims which were farfetched and continue to mischaracterize the evidence.

9. My position that the SEC's case is exaggerated, and that they cherry picked witnesses such as calling some Applebee's franchises but not all of them—even though they knew a check was issued to Baron International from Applebee's, was the reason I defended this case and did not enter into a settlement.

10. My defense of this case is not an indication that I do not recognize that mistakes were made.

11. I certainly learned that even though a company may not be a registered company having to file reports, it is important that information disseminated be checked and verified by credible sources rather just relying on conversation from the principals of the business.

12. I do not think an injunction or penny stock bar is appropriate or warranted. I have no desire to engage in wrongful conduct. I never wanted any shareholders to lose money. Rather, I hoped that Baron could become a successful company with money it raised from private offerings of stock.

Edward Hayter

## CERTIFICATE OF SERVICE

I, Edward Hayter, certify that I mailed a true copy of the foregoing to the following parties on this 12th day of October 2014:

Christopher E Martin
Securities & Exchange Commission
Miami Branch Office
801 Brickell Ave., Suite 1800
Miami, FL 33131

Clerk of Court (original + 2 copies)
United States District Court
US Courthouse and Federal Building
2110 First Street
Fort Myers, FL  33901

Edward Hayter