**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

**CASE NO. 2:10-CV-577-FTM-29 DNF**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **BIH CORPORATION,** | ) |
| **WAYNE A. BURMASTER, JR.,** | ) |
| **EDWARD W. HAYTER,** | ) |
| **NORTH BAY SOUTH CORPORATION,** | ) |
| **BIMINI REEF REAL ESTATE, INC.,** | ) |
| **RIVERVIEW CAPITAL INC.,** | ) |
| **CHRISTOPHER L. ASTROM, and** | ) |
| **DAMIAN B. GUTHRIE,** | ) |
| **Defendants,** | ) |
| | ) |
| **BARON INTERNATIONAL, INC.,** | ) |
| **THE CADDO CORPORATION, and** | ) |
| **BEAVER CREEK FINANCIAL CORPORATION,** | ) |
| | ) |
| **Relief Defendants.** | ) |
| _____ | ) |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY TO DEFENDANT EDWARD W. HAYTER'S RESPONSE TO THE SEC'S
MOTION FOR ENTRY OF FINAL JUDGMENT OF PERMANENT INJUNCTION AND
OTHER RELIEF AGAINST HAYTER**

Pursuant to the Court's November 12, 2014 Order (DE 243), the Plaintiff Securities and Exchange Commission hereby files its Reply to Defendant Edward W. Hayter's Response to the SEC's Motion for Entry of Final Judgment of Permanent Injunction and Other Relief Against Hayter.  [*See* DE 238 & 241].  In his Response, Hayter tries to minimize the jury's resounding verdict against him that overwhelmingly affirmed the SEC's case.  The SEC proved at trial that Hayter illegally received more than $480,000 by carrying out a total fraud.  Hayter did this by implementing a pump-and-dump scheme, which involved creating a fake CEO, issuing a series of false press releases, and Hayter conspiring with his cronies to sell tens of millions of BIH's shares at inflated prices.  Hayter tries to minimize and distort his role as the ring leader behind this total fraud by claiming:  (1) he won't engage in "further puffery of press releases"; (2) the "SEC's claims were embellished and grossly exaggerated"; and (3) that he now knows he needs to do more than just rely on information provided by others.  [*See* DE 241 at 5 & 8-9].  As the Court is well aware, the evidence at trial demonstrated that the press releases and other public information given to shareholders were not merely puffed up; instead, virtually every word in them was completely fabricated.  Moreover, Hayter was not someone at the periphery of this fraud.  Hayter was the ring leader and the biggest beneficiary of it.  The Court should, therefore, punish him more than anyone else who was involved in this pump-and-dump scheme.[1]

Additionally, Hayter's Response misstates the law and the factual law record.   In particular, Hayter: (1) inaccurately claims the disgorgement the SEC seeks against him would create a windfall for the SEC; (2) misstates the factual record by claiming the SEC did not show

---

[1]  For example, the Court has already imposed strong sanctions against Defendant Wayne Burmaster, who did not benefit from the fraud nearly as much as Hayter did, by: (i) issuing a permanent injunction enjoining Burmaster from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act; (ii) holding Burmaster jointly and severally liable with Defendants BIH Corporation and North Bay South Corporation for more than $1.1 million of disgorgement and more than $200,000 of prejudgment interest (with any payments made by other defendants or relief defendants proportionally reducing Burmaster's total disgorgement amount); (iii) issuing a permanent penny stock bar against Burmaster; and (v) ordering a civil penalty with the precise amount being determined at a later date.  [*See* DE 206 at 13-17].

he owned the entities that received the fraud proceeds and did not show investors suffered substantial losses; and (3) cites inapplicable case law.  As further demonstrated below, each of Hayter's assertions on why the Court should not enter the relief requested by the SEC are meritless.  Accordingly, the Court should: (1) enter a permanent injunction enjoining Hayter from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"); (2) hold Hayter jointly and severally liable with other Defendants for $1,121,051 of disgorgement and $222,522 of prejudgment interest; (3) impose a third-tier pecuniary gain penalty of $484,032; and (4) enter a permanent penny stock bar.

## I.     **EVIDENCE AT TRIAL RELEVANT TO HAYTER'S RESPONSE**

Hayter makes several factual misstatements in his Response.  First, he claims that the SEC "failed to show that Hayter even owned the entities [Relief Defendants The Caddo Corporation and Beaver Creek Financial Corporation] that received the funds."  [*See* DE 241 at 2].  This is simply incorrect.  Hayter admitted during questioning by the SEC, that throughout their entire existence, he was the sole owner of both Caddo and Beaver Creek.  [*See* attached Exhibit A, August 6, 2014, Hayter's Trial Testimony at 272-73].

Second, he claims that the SEC did not prove that the funds received by Relief Defendants Caddo and Beaver Creek from Defendants Christopher Astrom and Damian Guthrie were from the proceeds of BIH stock sales.  [*See* DE 241 at 3].  This is also simply incorrect.  Guthrie and Astrom testified that they sent proceeds from the sale of BIH stock to Caddo or Beaver Creek.  [*See* attached Exhibit B, August 6, 2014, Astrom's Trial Testimony, at 82-83 & 97 & Guthrie Trial Testimony, at 106-07 & 116-18].[2]

_____

[2] At trial while under oath, Hayter did not dispute that these entities received funds from Astrom and Guthrie.  [*See* attached Ex. A].

Third, Hayter tries to claim that the SEC did not prove that the fraud resulted in substantial losses to investors.[3]  [*See* DE 241 at 3].  This claim also misstates the record.  The evidence at trial is replete with evidence that Hayter created substantial losses to investors.  Hayter carried out a pump-and-dump scheme that substantial pumped up the price of BIH's stock, and then orchestrated the dump of more than a million dollars of BIH stock on unwitting investors at inflated prices.  [*See* DE 238 at 10-11 & attached Exhibit C, August 6, 2014, Timothy Galdencio Trial Testimony, at 244-45].[4]

Fourth, Hayter claims in his declaration (DE 241, Ex. A, ¶ 12) that no injunction or penny stock bar is warranted, because he purportedly had no desire to engage in wrongful conduct.  Hayter further claims he "never wanted any shareholders to lose money" since he wanted the company to become successful with "money it raised from" stock offerings.  Based on the evidence presented at trial, this is a bald face lie.  Hayter knew none of the money was going to go to BIH.  Hayter developed and implemented a scheme where he and his cronies took nearly every penny that was raised from investing public to enrich themselves.  There was no evidence that sales proceeds went to BIH.  In reality, *Hayter wanted, and knew, shareholders would lose money (*so he could gain).

## II.   LEGAL MEMORANDUM

### A.   Disgorgement& Prejudgment Interest

Hayter primarily contest the SEC's proposed disgorgement calculation (holding Hayter jointly and severally liable with other Defendants for $1,121,051 of disgorgement) by

---

[3] To obtain a Third Tier Penalty the SEC can show either that the fraudulent conduct "resulted in substantial losses *or* created a significant risk of substantial losses to other persons."  [*See* DE 238 at 8, emphasis added].

[4] Certainly, more than a million dollars in losses to investors constitutes a "substantial losses."

inaccurately claiming that it will create a windfall to the SEC.  [*See* DE 241 at 1-2].  Hayter misconstrues what it means for a defendant, like himself, to be held jointly and severally liable. Just the like the Court has previously ruled, if the Court ordered Hayter jointly and severally liable for the total amount fraudulent raised, any payment made by any Defendant or Relief Defendant would reduce the total amount Hayter owes.[5]  Stated another way, at most the SEC could collect from all the Defendants and Relief Defendants in this case in disgorgement is the total amount raised.  Hence, the SEC (or investors) would not be receiving a windfall by holding Hayter jointly and severally liable with others (with any payments by any Defendant or Relief Defendants proportionally reducing the total amount Hayter owes).

Hayter also disputes the interest rate that the Court should use in calculating prejudgment interest.  [*See* DE 238 at 2].  The SEC has proposed using the IRS underpayment rate that has been used by numerous Courts.  *See e.g., SEC v. Huff, et al.*, 758 F.Supp.2d 1288, 1363 (S.D. Fla. 2010), *aff'd* 455 Fed. Appx. 882 (11th Cir. 2012), *cert denied*, 133 S.Ct. 545).  Additionally, this Court has used this rate in this very case.  [*See* DE 202 at 22-23 & 206 at 16].[6]

### B.    Civil Penalty

Hayter primarily contests the SEC's proposed civil penalty (a third-tier pecuniary gain penalty of $484,032) by claiming that the SEC did not prove he received any proceeds from the fraud.  At trial, the SEC proved that Hayter solely owned the entities that received proceeds from the fraud and showed that investors loss more than $1 million.  Hence, the Court should impose a third-tier pecuniary gain penalty of $484,032 against Hayter to punish him for his fraudulent

---

[5] See e.g., DE 206 at 16 (holding Burmaster jointly and severally liable but with any payments made by other defendants or relief defendants proportionally reducing Burmaster's total disgorgement and prejudgment amount).

[6] Hayter claims, without any support, that the Court should use the prime rate which is presently 3.25%.  The SEC notes that the IRS underpayment rate is presently 3%.  [*See* DE 238 at Ex. 1].  Hence, Hayter's proposal is largely a distinction without a difference.

conduct and to deter other from engaging in similar misconduct.[7]

### C.      Permanent Penny Stock Bar

Hayter primarily contest the SEC's proposed sanction of the Court imposing a permanent penny stock bar against him by citing inapplicable case law, such as the *SEC v. Freiberg*, 2007 2692041 * 1 (D. Utah Sept. 12, 2007) (where there was a "single securities violation").  As the Court is well aware, the case is completely different than the *Freiberg* case.  This case involved a total fraud where Hayter violated *numerous* provisions of the federal securities laws.  (Hayter was found by the jury to have violated Sections 5(a), 5(c), and 17(a)(1)-(3) of the Securities Act, Section 10(b) and Rule 10b-5 of the Exchange Act, and aided and abetted BIH's violations of Section 10(b) and Rule 10b-5 of the Exchange Act).  Hence, the sanction the Court should impose in this case should be vastly stronger than the sanctions imposed in the *Freiberg* case and other cases cited by Hayter.  In sum, the evidence at trial overwhelmingly demonstrates that Hayter is a threat to penny stock investors, so the Court should protect investors by permanently barring him from participating in any offering of penny stock.[8]

In conclusion, the Court should grant the SEC's Motion for Entry of Final Judgment of Permanent Injunction and Other Relief Against Hayter.

Respectfully submitted,

November 19, 2014                              By: s/Christopher E. Martin
                                                   Christopher E. Martin
                                                   Senior Trial Counsel

---

[7]  Besides conclusory payments that he his broke, Hayter fails to provide any meaningful proof of his current and future financial condition.  Regardless, the other factors the Court should consider (*see* DE 238 at 9-10) greatly outweigh this single factor.  These factors coupled with the need for the Court to both punish Hayter and to deter others from engaging in similar misconduct drastically tilts the scales toward the conclusion the Court should impose a substantial penalty against Hayter.

[8]  Hayter raises several other arguments why the Court should not impose the SEC's requested relief which are either meritless (such as a permanent injunction violating his constitutional rights) or where already addressed in the SEC's Motion for Entry of Final Judgment (such as the need for a permanent injunction against Hayter), so we will not address them here.

martinc@sec.gov
Arizona Bar No. 018486
Direct Dial No.:  (305) 982-6386

Patrick R. Costello
Senior Trial Counsel
Florida Bar No. 75034
Telephone: (305) 982-6380
Facsimile: (305) 536-4154
E-mail:  costellop@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida  33131
Telephone:  (305) 982-6300
Facsimile:   (305) 536-4154

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2014, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to

the following:

Mark David Hunter, Esq.
Leser Hunter Taubman & Taubman, PLLC
255 University Drive
Coral Gables, FL 33134
Tel:  (305) 629-8816
Fax: (305) 629-8877
*Counsel for Defendants Bimini Reef Real Estate, Inc.,*
*Riverview Capital Inc., Christopher L. Astrom, and Damian B. Guthrie*

and that on November 19, 2014, I served the foregoing document and the notice of electronic

filing by U.S. Mail to the following non-CM/ECF participants:

Edward Hayter, *pro se*
2167 East 21st Street, #103
Brooklyn, NY 11229

Wayne Burmaster, *pro se*
88 Moffitt Street
Staten Island, NY 10312

6

s/Christopher E. Martin
Christopher Martin