```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION

SECURITIES    &    EXCHANGE
COMMISSION,

       Plaintiff,

v.                                    Case No: 2:10-cv-577-FtM-29DNF

BIH  CORPORATION,  WAYNE  A.
BURMASTER, EDWARD W. HAYTER,
NORTH BAY SOUTH CORPORATION,
THE CADDO CORPORATION, and
BEAVER   CREEK    FINANCIAL
CORPORATION,

       Defendants.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff the Securities and Exchange Commission's Motion for Final Judgment Setting Civil Money Penalty as to Defendant Wayne A. Burmaster, Jr. (Doc. #239) filed on September 9, 2014. No response has been filed and the time to respond has expired. For the reasons set forth below, Plaintiff's motion is granted.

**I.**

Plaintiff the Securities and Exchange Commission (the Commission or SEC) filed a five-count Complaint (Doc. #1) against Defendants Wayne A. Burmaster, Jr. (Burmaster) and others for violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

Following Burmaster's default, the Court granted the Commission's motion for a default judgment on July 14, 2014. (Doc. #206.) As part of that order, the Court ordered the following relief: (1) a judgment against Burmaster on Counts I through V of the Commission's Complaint; (2) a permanent injunction enjoining Burmaster from future securities violations; (3) held Burmaster jointly and severally liable with Defendants BIH Corporation (BIH) and North Bay South Corporation (North Bay) for disgorgement of ill-gotten gains and prejudgment interest; (4) a permanent penny stock bar against Burmaster; and (5) a civil penalty in an amount to be determined by the Court upon motion of the Commission. The Commission now moves for a civil penalty in the amount of $130,000.

**II.**

"A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009) (quotation omitted). Deeming all allegations in the Complaint as admitted, the relevant facts are as follows:

Burmaster and Edward W. Hayter (Hayter) implemented a "pump and dump" scheme involving the sale of unregistered shares of BIH stock to the investing public. BIH, which traded as a penny stock, claimed to be a holding company specializing in the restaurant and

hospitality industry.  BIH's website claimed that an individual named Cris Galo, an "accomplished entrepreneur," was the president and CEO of BIH.  In reality Galo never existed and was simply an alter ego of Burmaster and Hayter.  Under the guise of the fictitious Galo, Burmaster and Hayter controlled every aspect of BIH.

In order to effectuate the pump and dump scheme, Burmaster and Hayter made numerous material misrepresentations in the form of fraudulent press releases issued by BIH:

- On April 22, 2008, BIH announced that it had agreed to acquire Baron International (Baron), a company which builds restaurants and sells beverage systems and equipment.  Though BIH claimed that the acquisition cost "several million dollars," in actuality the purchase price was much lower.

- On April 29, 2008, BIH announced that Baron was awarded a contract for the complete installation of beverage systems for all fifty concessions locations at Citi Field in New York City.  BIH issued additional press releases on June 2 and June 19, 2008 in which they touted Citi Field as a client.  In actuality, Baron had subcontracted to install only the beer dispensing equipment at Citi Field and the contract was cancelled prior to the June 19th press release.

- BIH issued multiple press releases discussing a purported buyback program for BIH shares which were false and misleading because Burmaster and Hayter were simultaneously flooding the market with unregistered BIH shares.

- On June 25 and 26, 2008, BIH issued press releases announcing that Baron would sell for between 19 and 23 cents a share and if the sale was completed, BIH would pay a one-time cash dividend of between 7 and 9 cents a share.  On August 19, 2008, another press release was issued regarding the "pending sale" and claimed additional revenues Baron generated would create a higher sales price.  On November 11, 2008, a press release was issued claiming another purchase price increase.  These press releases were false and misleading because Baron

had not obtained any additional revenue or new accounts sufficient to generate a higher sales price.

- Between December 7, 2008 and January 12, 2009, BIH issued several press releases announcing plans to pay a stock and cash dividend. These press releases were false and misleading because BIH did not have sufficient funds to pay the promised dividend and had not provided the FINRA/NASDAQ dividend department with the requisite notice to issue a cash dividend.

- Additionally, BIH issued numerous press releases quoting Galo and describing actions taken by Galo. These press releases were false and misleading because Galo does not exist.

As a result of these false and misleading press releases, Burmaster and Hayter were able to dramatically increase the price and trading volume of BIH shares.

From 2008 through March 2009, Burmaster and Hayter sold unregistered shares of BIH stock to various companies. One of those companies, North Bay, was controlled by Burmaster. No registration statement has been filed or is in effect with the Commission in connection with these sales, and BIH, Burmaster, and Hayter were not subject to any exemption from registration. BIH received little or no consideration for issuing tens of millions of shares to those companies. In turn, the companies dumped approximately $1.1 million of BIH stock on "unwitting" investors. The companies retained a portion of the illegally obtained sales proceeds and sent the remaining funds to entities controlled by Burmaster and Hayter.

**III.**

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." SEC v. Monterosso, 756 F.3d 1326, 1338 (11th Cir. 2014). Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act authorize three tiers of civil monetary penalties against violators of the Acts. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d). The first tier applies to any violation of the Acts. Id. The second tier applies to violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." Id. The third tier applies to any violation satisfying the second-tier criteria that also "resulted in substantial losses or created a significant risk of substantial losses to other persons." Id.

The amount of the civil penalty is determined by the district judge "in light of the facts and circumstances" and subject to statutorily-prescribed maximums. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d). For violations occurring between February 2005 and March 2009, the time period at issue here, the statutory penalties are: $6,500 for each first tier violation; $65,000 for each second tier violation; and $130,000 for each third tier violation. 17 C.F.R. § 201.1003, Tbl. III. However, the maximum statutory penalty may be exceeded up to and including the "gross amount of pecuniary gain to the defendant as a result of the violation." 15 U.S.C. §

77t(d); 15 U.S.C. § 78u(d).  In evaluating the facts and circumstances of the case, the Court looks to factors such as:

> (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing, (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons, (6) defendants' lack of cooperation and honesty with authorities, if any, and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

SEC v. Aerokinetic Energy Corp., No. 08-CV-1409, 2010 WL 5174509, at *5 (M.D. Fla. Dec. 15, 2010) (quotation omitted), aff'd, 444 F. App'x 382 (11th Cir. 2011).

The Commission argues that Burmaster's conduct qualifies for third tier penalties.  It is indisputable that the pump and dump scheme involved fraud.  Thus, Burmaster is subject to either a second or third tier penalty depending upon whether the scheme resulted in, or created a significant risk of, substantial losses to other persons.  15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d).  While the Acts do not define the term "substantial loss," the prevailing view in this District is that the $1.1 million loss in this case is sufficiently substantial to subject Burmaster to third tier penalties.  SEC v. Aleksey, No. 07-CV-159, 2007 WL 1789113, at *2 (M.D. Fla. June 19, 2007) ($82,960.18 was a substantial loss); Aerokinetic, 2010 WL 5174514, at *7 ($500,000 was a substantial loss); SEC v. Simmons, No. 04-CV-2477, 2008 WL 7935266, at *20

(M.D. Fla. Apr. 25, 2008) ($1,144,583.95 was a substantial loss). Accordingly, the imposition of a third-tier civil penalty against Burmaster for each violation is appropriate.

Following his default, the Court entered a judgment finding Burmaster liable for five separate securities violations, each of which carries a maximum penalty of $130,000. Accordingly, the maximum civil penalty the Court may impose is the greater of $650,000 ($130,000 for each of the five violations) or Burmaster's pecuniary gain.[1] The Commission requests that the Court impose a civil penalty in the amount of $130,000.

By virtue of his default, Burmaster has admitted that he was an integral part of a pump and dump scheme in which he and Hayter used BIH, North Bay, and other companies to dump more than $1 million of BIH stock on the unwitting investing public. As set forth in the Complaint, Burmaster was complicit in issuing a series of press releases containing numerous verifiably false statements designed to artificially inflate the price of BIH shares in order to increase the amounts obtained by Burmaster and others when those shares were ultimately dumped on investors. In doing so he acted with a high degree of scienter and his actions resulted in a

---

[1] The SEC did not provide a calculation of Burmaster's pecuniary gain, presumably because it not large enough to impact the maximum penalty permitted.

substantial loss to investors.  Accordingly, the Court concludes that $130,000 civil penalty is appropriate in this case.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Plaintiff's Motion for Final Judgment Setting Civil Money Penalty as to Defendant Wayne A. Burmaster, Jr. (Doc. #239) is **GRANTED.**  Judgment is entered in favor of Plaintiff and against Defendant Wayne A. Burmaster, Jr. as set forth in the Court's July 14, 2014 Opinion and Order (Doc. #206) and as follows:

1. Burmaster shall pay a third-tier civil penalty in the amount of $130,000, pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).  Burmaster shall make this payment within 14 days after entry of this Judgment.

    a) Burmaster may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm.  Burmaster may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to Enterprise Services Center, Accounts Receivable Branch, 6500 South MacArthur Boulevard, Oklahoma City, OK 73169 and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Burmaster as a Defendant in this action; and specifying that payment is made pursuant to this Judgment.

    b) Burmaster shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Burmaster relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds

        shall be returned to Burmaster. The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the Fund subject to the Court's approval. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Judgment to the United States Treasury. The Commission may enforce the Court's judgment for disgorgement and prejudgment interest, by moving for civil contempt (or through other collection procedures authorized by law) at any time after fourteen days following entry of the Judgment. Burmaster shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

    c) Additionally, Burmaster shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amount paid pursuant to this Final Judgment, regardless of whether such penalty amount or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Burmaster further shall not claim, assert, or apply for tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amount he pays pursuant to this Final Judgment, regardless of whether such penalty amount or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

2. For purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the Complaint are true and admitted by Burmaster, and further, any debt for disgorgement, prejudgment interest or civil penalty or other amounts due by Burmaster in this action are debts for the violations by Burmaster of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

3. The Court will retain jurisdiction over the enforcement of the judgment upon entry.

The Clerk shall enter judgment in favor of the Commission and against Defendant Wayne A. Burmaster, Jr. as set forth herein and in the Court's July 14, 2014 Opinion and Order (Doc. #206).

**DONE and ORDERED** at Fort Myers, Florida, this __12th__ day of December, 2014.

                                             _____
                                             JOHN E. STEELE
                                             UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record