UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SECURITIES      &      EXCHANGE
COMMISSION,

      Plaintiff,

v.                               Case No: 2:10-cv-577-FtM-29DNF

BIH  CORPORATION,  WAYNE  A.
BURMASTER, EDWARD W. HAYTER,
NORTH BAY SOUTH CORPORATION,
THE CADDO CORPORATION, and
BEAVER   CREEK   FINANCIAL
CORPORATION,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiff the Securities and Exchange Commission's Motion for Entry of Final Judgment of Permanent Injunction and Other Relief Against Defendant Edward W. Hayter (Doc. #238) filed on September 9, 2014.  Defendant Edward W. Hayter (Hayter) filed a Response (Doc. #241) on October 16, 2014.  With leave from the Court, Plaintiff filed a Reply (Doc. #244) on November 19, 2014.  Plaintiff's motion is granted and judgment is entered against Hayter as described herein.

### I.

This case is a civil enforcement action brought by the Securities and Exchange Commission (the Commission or SEC) concerning a scheme to "pump and dump" shares of BIH Corporation's

(BIH) stock on the investing public.  The basic underlying facts, as established by the Commission at trial, are as follows:

BIH, which traded as a penny stock, claimed to be a holding company specializing in the restaurant and hospitality industry. BIH's website stated that an individual named Cris Galo (Galo), an accomplished entrepreneur, was the president and CEO of BIH.  In reality, Defendants Hayter and Wayne A. Burmaster (Burmaster) controlled every aspect of BIH.[1]  During 2008 and 2009, in order to effectuate the pump and dump scheme, Hayter and Burmaster issued numerous fraudulent press releases on behalf of BIH.  The press releases dramatically increased the price and trading volume of BIH shares.

During the same time period, Hayter and Burmaster sold tens of millions of unregistered shares of BIH stock to various companies for little or no consideration.  One of those companies, North Bay South Corporation (North Bay), was controlled by Burmaster.  In turn, those companies sold the newly-received stock to unwitting investors at prices inflated by BIH's fraudulent press releases.  All told, those companies sold 89.8 million BIH shares for a total of $1,121,051.  The companies retained a portion of

---

[1] While an individual by the name of Christian Gallo does exist and was deposed in this case, there was no evidence that Mr. Gallo actually controlled BIH or had the credentials touted in BIH materials.  To the contrary, the Commission demonstrated that Hayter and Burmaster used Gallo (either with or without his consent) as an alter ego to shield their identities.

the sales proceeds and sent the remaining funds to entities controlled by Burmaster and Hayter. Of relevance here, two entities controlled by Hayter received $484,032 pursuant to the scheme.

The Commission brought a five-count Complaint against Hayter, Burmaster, BIH, North Bay, and others alleging violations of the Securities Act of 1933 (the Securities Act), the Securities Exchange Act of 1934 (the Exchange Act), and Exchange Act Rule 10b-5. Following their defaults, the Court entered Judgments against BIH, North Bay, and Burmaster which, *inter alia*, ordered them to pay disgorgement of ill-gotten gains, jointly and severally, in the amount of $1,137,106. (Docs. ##121, 206.)

On August 8, 2014, a jury found Hayter liable for all of the Commission's claims against him. In particular, the jury found that Hayter violated (i) Sections 5(a) and 5(c) of the Securities Act; (ii) Section 17(a)(1) of the Securities Act; (iii) Sections 17(a)(2) and 17(a)(3) of the Securities Act; and (iv) Section 10(b) and Rule 10b-5 of the Exchange Act. The jury also found that Hayter aided and abetted BIH's violations of Section 10(b) and Rule 10b-5 of the Exchange Act. The Commission now seeks an order (i) permanently enjoining Hayter from future violations of the Securities Act and the Exchange Act; (ii) holding Hayter jointly and severally liable with Burmaster, BIH, and North Bay for $1,121,051 of disgorgement plus $222,522 of prejudgment interest;

- 3 -

(iii) imposing a third-tier pecuniary gain civil penalty of $484,032 against Hayter; and (iv) entering a penny stock bar against Hayter.

## II.

#### A.  Injunction

The Commission seeks a permanent injunction barring Hayter from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act, and from aiding and abetting violations of Section 10(b) and Rule 10b-5 of the Exchange Act.

"The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." SEC v. Calvo, 378 F.3d 1211, 1216 (11th Cir. 2004). "Indicia that a wrong will be repeated include the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." Id. (quoting SEC v. Carriba Air, Inc., 681 F.2d 1318, 1322 (11th Cir. 1982)).

To comport with the Federal Rules of Civil Procedure, an injunction must "state its terms specifically," and "describe in

reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). However, recognizing that reliance on official statutory and regulatory language may be helpful in crafting an appropriately-specific injunction, the Eleventh Circuit has held that in the context of a SEC civil enforcement action "a broad, but properly drafted injunction, which largely uses the statutory or regulatory language may satisfy the specificity requirement of Rule 65(d) so long as it clearly lets the defendant know what he is ordered to do or not do." SEC v. Goble, 682 F.3d 934, 952 (11th Cir. 2012).

Hayter argues that an injunction should not be imposed because (1) he has not engaged in any fraudulent conduct since the BIH pump and dump scheme concluded; (2) the Commission's assertion that he is an investment banker is not sufficiently-specific to demonstrate that he has the opportunity to commit additional securities violations; (3) his decision to take this case to trial is not a failure to accept responsibility for his actions; and (4) he has no intent to commit future violations.

At trial, the Commission demonstrated that Hayter was instrumental in issuing a series of fraudulent press releases. Thus, Hayter's misconduct was not merely an isolated incident. Additionally, despite what Hayter claims, the fraudulent press releases were not simply "puffery," but instead contained numerous

verifiably false statements.  This suggests that Hayter acted with a high degree of scienter.  Finally, it appears that Hayter has not accepted responsibility for his actions.  For example, Hayter continues to place considerable blame on Galo, despite the fact that he presented no evidence that Galo was involved in BIH's operations.  Additionally, notwithstanding any level of complicity by Galo, the Commission presented considerable evidence that Hayter was directly involved in the pump and dump scheme.  Likewise, Hayter attempts to downplay the nature of his conduct, characterizing it as "puffery" and "rely[ing] on what others told [him]," despite the jury's verdict that Hayter knew (or was severely reckless in not knowing) that BIH's press releases contained material misrepresentations.  (Doc. #41, p.5; Doc. #41-1, ¶ 7.)

While the Court recognizes that considerable time has passed since the fraudulent conduct at issue, that Hayter has declared that he will not commit any future securities violations, and that Hayter's financial condition would render further violations difficult, the Court concludes that these mitigating factors are outweighed by the nature of Hayter's conduct and his refusal to fully recognize the wrongness of his conduct.  Therefore, the Count finds that the Commission has demonstrated a reasonable likelihood that additional securities violations will be committed and injunctive relief is appropriate.  Additionally, the Court

finds that the Commission's proposed injunctions clearly set forth the acts which Hayter is ordered not to do.   Accordingly, they comport with Fed. R. Civ. P. 65(d) and, therefore, the Court will grant the injunctive relief requested by the Commission.

**B.   Disgorgement**

The Commission requests that Hayter be held jointly and severally liable for disgorgement of the entire amount gained by the pump and dump scheme.   According to the Commission and as presented at trial, the scheme's ill-gotten gains total $1,121,051 plus interest.[2]   Hayter does not contest that the scheme's ill-gotten gains totaled $1,121,051.   Instead, Hayter argues that he should be required to disgorge only $484,032, the amount of ill-gotten gains the Commission claims Hayter (via entities he controlled) received.   In the alternative, should the Court find Hayter jointly and severally liable in full, Hayter requests that the Court apply its disgorgement order equally to all defendants, such that the total amount disgorged does not exceed $1,121,051. Lastly, Hayter argues that prejudgment interest should be applied at the "prime rate" as opposed to the IRS underpayment rate requested by the Commission.

---

[2] This calculation is slightly less than the Commission's pre-trial calculation of $1,137,106.   (Doc. #67-50.)   Accordingly, the Court will amend its prior Judgments (Docs. ##121, 206) against Burmaster, BIH, and North Bay to reflect the revised disgorgement figure.

"The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." Calvo, 378 F.3d at 1217. "[T]he SEC needs to produce only a reasonable approximation of the defendant's ill-gotten gains, and exactitude is not a requirement." SEC v. Monterosso, 756 F.3d 1326, 1337 (11th Cir. 2014) (quotation omitted). "Once the SEC has produced a reasonable approximation of the defendant's unlawfully acquired assets, the burden shifts to the defendant to demonstrate the SEC's estimate is not reasonable." Id. Additionally, "[i]t is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct." Calvo, 378 F.3d at 1215. Thus, when parties act in concert to violate securities law, each party is jointly and severally liable for disgorgement of ill-gotten gains even if a particular party did not receive the proceeds. Monterosso, 756 F.3d at 1337-38 ("[A] personal financial benefit is not a prerequisite for joint and several liability.") (quoting SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1098 (9th Cir. 2010)).

At trial, the Commission demonstrated that Hayter was an integral part of the pump and dump scheme in which he and Burmaster used BIH, North Bay, and other companies to dump more approximately $1,121,051 of BIH stock on the investing public, and the jury found

Hayter liable for each of the five securities violations alleged by the Commission.  This is more than sufficient to support a finding that Hayter is jointly and severally liable with Burmaster, BIH, and North Bay.  The amount of ill-gotten gains personally received by Hayter is irrelevant.  Id.  Accordingly, the Court finds that the Commission is entitled to disgorgement from Hayter, jointly and severally with all other defendants, in the amount of $1,121,051.[3]

The Commission also requests an award of prejudgment interest on the disgorgement amount.  The decision to grant prejudgment interest, as well as the rate at which interest is awarded, are within the discretion of the district court.  SEC v. Carrillo, 325 F.3d 1268, 1273 (11th Cir. 2003).  The purpose of prejudgment interest is "to divest those found liable under the securities laws of any benefit accrued from the use of the ill-gotten gain." SEC v. Yun, 148 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001), aff'd in part and vacated in part on other grounds, 327 F.3d 1263.  Hayter does not argue that prejudgment interest is inappropriate; his only quarrel is with the Commission's request that the Court calculate interest using the IRS underpayment rate as set forth in

---

[3] As in all instances of joint and several liability, any disgorgement paid by any defendant will proportionally reduce the amount owed by the remaining defendants.  Accordingly, the total disgorgement paid to the Commission's cannot exceed $1,121,051 plus interest.

Section 6621(a)(2) of the Internal Revenue Code.  Hayter asks the Court to employ the "prime" rate instead.

Courts routinely use the IRS underpayment rate when calculating prejudgment interest in SEC enforcement actions because "[t]hat rate reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud."  SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996); see also SEC v. Lauer, 478 F. App'x 550, 558 (11th Cir.) ("[T]he district court did not abuse its discretion by applying the commonly-used IRS underpayment rate."), cert. denied, 133 S. Ct. 545 (2012); Yun, 148 F. Supp. 2d at 1293 ("Courts have adopted the IRS underpayment rate without controversy.").  Here, Hayter has not articulated any compelling reason to depart from the "commonly-used" IRS underpayment rate.  Accordingly, the Court finds that the Commission is entitled to prejudgment interest as calculated by the IRS underpayment rate.

## C.   Civil Penalty

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations."  Monterosso, 756 F.3d at 1338.  Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act authorize three tiers of civil monetary penalties against violators of the Acts. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d).  The first tier

applies to any violation of the Acts.  Id.  The second tier applies to violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." Id.  The third tier applies to any violation satisfying the second-tier criteria that also "resulted in substantial losses or created a significant risk of substantial losses to other persons."  Id.

The amount of the civil penalty is determined by the district judge "in light of the facts and circumstances" and subject to statutorily-prescribed maximums.  15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d).  For violations occurring between February 2005 and March 2009, the time period at issue here, the statutory penalties are: $6,500 for each first tier violation; $65,000 for each second tier violation; and $130,000 for each third tier violation.  17 C.F.R. § 201.1003, Tbl. III.  However, the maximum statutory penalty may be exceeded up to and including the "gross amount of pecuniary gain to the defendant as a result of the violation."  15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d).  In evaluating the facts and circumstances of the case, the Court looks to factors such as:

> (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing, (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons, (6) defendants' lack of cooperation and honesty with authorities, if any, and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

SEC v. Aerokinetic Energy Corp., No. 08-CV-1409, 2010 WL 5174509, at *5 (M.D. Fla. Dec. 15, 2010) (quotation omitted), aff'd, 444 F. App'x 382 (11th Cir. 2011).

The Commission argues that Hayter's pump and dump scheme qualifies for third tier penalties. It is indisputable that Hayter's pump and dump scheme involved fraud. Thus, Hayter is subject to either a second or third tier penalty depending upon whether the scheme resulted in, or created a significant risk of, substantial losses to other persons. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d). While the Acts do not define the term "substantial loss," the prevailing view in this District is that the $1.1 million loss in this case is sufficiently substantial to subject Hayter to third tier penalties. SEC v. Aleksey, No. 07-CV-159, 2007 WL 1789113, at *2 (M.D. Fla. June 19, 2007) ($82,960.18 was a substantial loss); Aerokinetic, 2010 WL 5174514, at *7 ($500,000 was a substantial loss); SEC v. Simmons, No. 04-CV-2477, 2008 WL 7935266, at *20 (M.D. Fla. Apr. 25, 2008) ($1,144,583.95 was a substantial loss). Accordingly, the imposition of a third tier penalty against Hayter for each violation is appropriate.

Here, the jury found Hayter liable for five separate securities violations, each of which carries a maximum penalty of $130,000. Accordingly, the maximum civil penalty the Court may impose is the greater of $650,000 ($130,000 for each of the five violations) or Hayter's pecuniary gain. The Commission requests

a civil penalty of $484,032, the amount the Commission contends Hayter (and/or entities Hayter controlled) received from the pump and dump scheme.   Hayter argues that a lesser penalty is appropriate for two reasons.   First, he asserts that the Commission failed to prove that he had any pecuniary gain from the pump and dump scheme.   At trial, the Commission presented evidence that BIH issued tens of millions of shares of BIH stock to various companies for little or no consideration and that those companies remitted $484,032 in sales proceeds to entities controlled by Hayter.   Although Hayter disputes that he personally received any funds, he presented no compelling evidence to the contrary. Accordingly, the Court agrees with the Commission that Hayter's pecuniary gain was $484,032.   Moreover, even absent any evidence of pecuniary gain, the Acts permit the Court to impose a civil penalty of $130,000 *per violation*.   Thus, the Court may impose a substantial civil penalty even if it found the Commission's pecuniary gain calculations unconvincing.

Second, Hayter states that he has been financially devastated by these proceedings and that he will be unable to pay any disgorgement and/or penalty the Court imposes.   Hayter requests that the Court take into account his inability to pay when determining the appropriate penalty.   Although Hayter's financial situation is relevant, "[a]t most, ability to pay is one factor to be considered in imposing a penalty," and "nothing in the

securities laws expressly prohibits a court from imposing penalties or disgorgement liability in excess of a violator's ability to pay." SEC v. Warren, 534 F.3d 1368, 1370 (11th Cir. 2008).

As set forth above, Hayter made repeated misrepresentations in BIH press releases, acted with a high degree of scienter, and does not appear to have fully accepted the wrongness of his conduct. Accordingly, the Court finds that a civil penalty of $484,032, the amount of Hayter's pecuniary gain, is appropriate in this case.

**D.  Penny Stock Bar**

The Securities Act and the Exchange Act authorize a court to prohibit a "person from participating in an offering of penny stock," if that person "participated in a securities violation involving an offering of penny stock." 15 U.S.C. § 77t(g)(1); 15 U.S.C. § 78u(d)(6)(A). Penny stocks include any equity security trading below five dollars per share except as exempted by Rule 3a51-1 of the Exchange Act. 17 C.F.R. § 240.3a51-1. It is undisputed that BIH was a penny stock during the relevant time period. A penny stock bar may be imposed "conditionally or unconditionally, and permanently or for such period of time as the court shall determine." Id. However, a permanent penny stock bar "is without justification in fact unless the Commission specifically articulates compelling reasons for such a sanction."

Steadman v. SEC, 603 F.2d 1126, 1140 (5th Cir. 1979) (quoting SEC v. Blatt, 583 F.2d 1325, 1334 (5th Cir. 1978)), aff'd, 450 U.S. 91 (1981).[4]

When evaluating the need for a penny stock bar, the court examines the nature of the defendant's conduct and the likelihood that his occupation and experience will present further opportunities to violate the securities laws. SEC v. Converge Global, Inc., No. 04-CV-80841, 2006 WL 907567, at *5 (S.D. Fla. Mar. 10, 2006). Examples of conduct warranting a penny stock bar include facts which "indicate a reasonable likelihood that a particular violator cannot ever operate in compliance with the law" or are "so egregious that even if further violations of the law are unlikely, the nature of the conduct mandates permanent debarment as a deterrent to others in the industry." Steadman, 603 F.2d at 1140.

The Commission contends that a penny stock bar is warranted because Hayter was the mastermind of a pump and dump scheme designed to prey on unwitting penny stock investors. According to the Commission, the egregiousness of Hayter's conduct dictates that a permanent bar is necessary to protect penny stock investors. Hayter responds that a penny stock bar is not necessary because he

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

is not likely to commit future violations as evidenced by the fact that he has not engaged in any misconduct in the five years since the BIH scheme. The Court agrees with the Commission. As set forth above, Hayter's misconduct was not an isolated incident, but a series of misrepresentations. The jury concluded that Hayter either knew or was severely reckless in not knowing the falsity of the press releases he issued, which belies Hayter's attempts to downplay his involvement. The Court concludes that the nature of Hayter's misconduct, combined with his apparent unwillingness to acknowledge the wrongness of his actions, indicate a reasonable likelihood that he will engage in future penny stock violations. Accordingly, the Court will impose a penny stock bar against Hayter.

Accordingly, it is hereby

**ORDERED:**

Plaintiff Securities and Exchange Commission's Motion for Entry of Final Judgment of Permanent Injunction and Other Relief Against Defendant Edward W. Hayter (Doc. #238) is **GRANTED.** Judgment is entered in favor of Plaintiff and against Defendant Edward W. Hayter as follows:

1. Edward W. Hayter (Hayter) and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 5 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e, by, directly or indirectly, in the absence of any applicable

exemption:

    a)    unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or of communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

    b)    unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

    c)    making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act , 15 U.S.C. § 77h.

2.    A separate Injunction shall issue as follows:

    a)    Hayter and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 17(a)(1)-(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1)-(3), in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

        1)    to employ any device, scheme, or artifice to defraud;

        2)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading; or

3)  to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii) making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company.

b)  Hayter and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

1)  to employ any device, scheme, or artifice to defraud;

2)  to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3)  to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii)

making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company.

3.   Hayter is jointly and severally liable with Defendants Wayne A. Burmaster, Jr., BIH Corporation, and North Bay South Corporation for disgorgement of $1,121,051, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $222,522, for a total of $1,343,573 (with any payments made by the other Defendants or Relief Defendants proportionally reducing Hayter's total disgorgement and prejudgment amount).   Hayter shall also pay a third-tier pecuniary gain civil penalty in the amount of $484,032, pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).   Hayter shall satisfy this obligation by paying $1,827,605 to the Securities and Exchange Commission within 14 days after entry of this Judgment.

   a)   Hayter may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Hayter may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to Enterprise Services Center, Accounts Receivable Branch, 6500 South MacArthur Boulevard, Oklahoma City, OK 73169 and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Hayter as a Defendant in this action; and specifying that payment is made pursuant to this Judgment.

   b)   Hayter shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Hayter relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Hayter. The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the

Fund subject to the Court's approval. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Judgment to the United States Treasury. The Commission may enforce the Court's judgment for disgorgement and prejudgment interest, by moving for civil contempt (or through other collection procedures authorized by law) at any time after fourteen days following entry of the Judgment. Hayter shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

c)   Additionally, Hayter shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amount paid pursuant to this Final Judgment, regardless of whether such penalty amount or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Hayter further shall not claim, assert, or apply for tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amount he pays pursuant to this Final Judgment, regardless of whether such penalty amount or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

4.   Hayter is permanently barred from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock. A penny stock is any equity security that has a price of less than five dollars, except as provided in Rule 3a51-1 under the Exchange Act, 17 C.F.R. § 240.3a51-1.

5.   For the purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the jury found that Hayter violated Sections 5(a), 5(c) and 17(a) of the Securities Act; Section 10(b) and Rule 10b-5 of the Exchange Act; and that Hayter aided and abetted Defendant BIH Corporation's violations of Section 10(b) and Rule 10b-5 of the Exchange Act, and further, any debt for disgorgement, prejudgment interest or civil penalty or other amounts due by

Hayter in this action are debts for the violations by Hayter of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

6.    The Court will retain jurisdiction over the enforcement of the judgment upon entry.

The Clerk shall enter judgment in favor of the Commission and against Defendant Edward W. Hayter as set forth herein. The Court's prior Judgments against Defendants Wayne A. Burmaster, BIH Corporation, and North Bay South Corporation (Docs. ##121, 206) are **AMENDED** to reflect that Defendants are jointly and severally liable for disgorgement in the amount of **$1,121,051** plus prejudgment interest.

**DONE and ORDERED** at Fort Myers, Florida, this ___12th___ day of December, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record