UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SECURITIES & EXCHANGE COMMISSION,

    Plaintiff,

v.  Case No: 2:10-cv-577-FtM-29DNF

EDWARD W. HAYTER, NORTH BAY SOUTH CORPORATION, THE CADDO CORPORATION, and BEAVER CREEK FINANCIAL CORPORATION,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Securities and Exchange Commission's Motion for Final Judgments Against Defendants Bimini Reef Real Estate, Inc., Riverview Capital Inc., Christopher L. Astrom, and Damian B. Guthrie (Doc. #149) filed on April 19, 2013.[1]  Defendants filed a Response (Doc. #154) on May 20, 2013 and the Court heard oral argument on January 27, 2015. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

This case is a civil enforcement action brought by the Securities and Exchange Commission (the Commission or SEC)

---

[1] The motion also requests that the Court impose a civil penalty against Defendant North Bay South Corporation.  The Court will address that portion of the motion in a separate order.

concerning a scheme to "pump and dump" shares of BIH Corporation's (BIH) stock on the investing public. The basic underlying facts are as follows:

BIH, which traded as a penny stock, claimed to be a holding company specializing in the restaurant and hospitality industry. BIH's website stated that an individual named Cris Galo, an accomplished entrepreneur, was the president and CEO of BIH. In reality, Defendants Edward W. Hayter (Hayter) and Wayne A. Burmaster (Burmaster) controlled every aspect of BIH. During 2008 and 2009, in order to effectuate the pump and dump scheme, Hayter and Burmaster issued numerous fraudulent press releases on behalf of BIH. The press releases dramatically increased the price and trading volume of BIH shares.

During the same time period, Hayter and Burmaster sold tens of millions of unregistered shares of BIH stock to Defendants Bimini Reef Real Estate, Inc. (Bimini Reef), Riverview Capital Inc. (Riverview), and other companies for little or no consideration.[2] In turn, Bimini Reef, Riverview, and other companies sold the newly-received stock to unwitting investors at prices inflated by BIH's fraudulent press releases. All told, Bimini Reef, Riverview, and other companies sold 89.8 million BIH

---

[2] Defendant Christopher L. Astrom (Astrom) is the sole principal of Bimini Reef and Defendant Damian B. Guthrie (Guthrie) is the sole principal of Riverview.

shares for a total of $1,121,051. The companies retained a portion of the sales proceeds and sent the remaining funds to entities controlled by Burmaster and Hayter.

The Commission brought a five-count Complaint against Hayter, Burmaster, BIH, Bimini Reef, Riverview, Astrom, Guthrie and others alleging violations of the Securities Act of 1933 (the Securities Act), the Securities Exchange Act of 1934 (the Exchange Act), and Exchange Act Rule 10b-5. On October 25, 2010, the Court entered consent judgments against Bimini Reef, Riverview, Astrom, and Guthrie. (Docs. ##24-25.) Those judgments enjoined Bimini Reef, Riverview, Astrom, and Guthrie from violating Sections 5(a) and (c) of the Securities Act of 1933 (the Securities Act), and provided for the imposition of disgorgement and civil penalties pursuant to Section 20(d) of the Securities Act. (Id.) The amount of disgorgement and civil penalties those Defendants must pay was left for future determination following briefing by the parties and an evidentiary hearing. (Id.) The parties have fully briefed the issue and an evidentiary hearing was held on January 27, 2015.

**II.**

**A.  Disgorgement**

"The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004). "[T]he SEC needs

to produce only a reasonable approximation of the defendant's ill-gotten gains, and exactitude is not a requirement." SEC v. Monterosso, 756 F.3d 1326, 1337 (11th Cir. 2014) (quotation omitted). "Once the SEC has produced a reasonable approximation of the defendant's unlawfully acquired assets, the burden shifts to the defendant to demonstrate the SEC's estimate is not reasonable." Id. Additionally, "[i]t is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct." Calvo, 378 F.3d at 1215. Thus, when parties act in concert to violate securities law, each party is jointly and severally liable for disgorgement of ill-gotten gains even if a particular party did not receive the proceeds. Monterosso, 756 F.3d at 1337-38 ("[A] personal financial benefit is not a prerequisite for joint and several liability.") (quoting SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1098 (9th Cir. 2010)).

In is motion, the Commission relies upon the declaration of Timothy Galdencio (Galdencio), a Commission accountant who examined the records of BIH, Bimini Reef, Riverview, and other entities involved in the pump and dump scheme. (Doc. #149-1.) According to Galdencio, Bimini Reef received $507,772 from its sale of BIH shares. Of that $507,772, Astrom's father wired $245,356 to an entity controlled by Hayter, and Bimini Reef and

Astrom retained the remaining $262,416. (Id. at ¶ 4.) Additionally, Galdencio calculated that Riverview received $513,721 from its sale of BIH shares, $238,676 of which Riverview wired to an entity controlled by Hayter. Riverview and Guthrie retained the remaining $275,045. (Id.) Based on these findings, the Commission seeks disgorgement in the amount of $262,416 against Bimini Reef and Astrom and $275,045 against Riverview and Guthrie.

Bimini Reef and Astrom do not challenge the Commission's calculation of their ill-gotten gains. Accordingly, the Court finds that the Commission is entitled to disgorgement from Bimini Reef and Astrom, jointly and severally, in the amount of $262,416. Riverview and Guthrie contest the Commission's calculation, arguing that the Commission ignored additional transfers made to entities controlled by Hayter and failed to deduct Riverview's legitimate business expenses.

1.  **Additional Transfers**

Riverview and Guthrie argue that the Commission failed to credit additional transfers to entities controlled by Hayter. Specifically, Riverview and Guthrie provided documentary evidence that Riverview transferred an additional $159,021.50 to companies known as Wahoo Funding, Inc. (Wahoo) and Bonn Capital (Bonn). (Doc. #154-1.) According to Guthrie, that $159,021.50 consisted solely of proceeds from the sale of BIH shares and was transferred to Wahoo and Bonn at Hayter's request. Astrom, who controlled

Wahoo and Bonn, testified that the $159,021.50 he received from Riverview was then transferred, in its entirety, to entities controlled by Hayter. Thus, according to Riverview and Guthrie, these transfers are no different than the $238,676 Riverview wired directly to entities controlled by Hayter and, therefore, do not constitute ill-gotten gains.

While this account is somewhat contradictory to Astrom and Guthrie's prior testimony that they retained approximately 50% of the BIH sales proceeds, it is supported by the relevant financial records and the Commission did not provided evidence contradicting the flow of funds described by Guthrie and Astrom at the evidentiary hearing. Accordingly, the Court concludes that the additional $159,021.50 that Riverview transferred to Hayter via Wahoo and Bonn does not constitute ill-gotten gains and must be deducted from the amount to be disgorged.

2. **Business Expenses**

Riverview and Guthrie argue that the Commission's calculation of their ill-gotten gains must be further reduced to account for various legitimate business expenses. According to Riverview and Guthrie, they incurred $23,236.51 in expenses related to their sale of BIH shares, which they argue must be deducted from the calculation of their ill-gotten gains.

"[T]he power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing.

Any further sum would constitute a penalty assessment." SEC v. ETS Payphones, Inc., 408 F.3d 727, 735 (11th Cir. 2005) (quotation omitted).  However, "how a defendant chooses to spend his ill-gotten gains, whether it be for business expenses, personal use, or otherwise, is immaterial to disgorgement." SEC v. Aerokinetic Energy Corp., 444 F. App'x 382, 385 (11th Cir. 2011) (quotation omitted).  Accordingly, "the overwhelming weight of authority holds that securities law violators may not offset their disgorgement liability with business expenses."  SEC v. Merch. Capital, LLC, 486 F. App'x 93, 96 (11th Cir. 2012) (quoting SEC v. Brown, 658 F.3d 858, 861 (8th Cir. 2011)).

Here, the Court sees no reason to break with "the overwhelming weight of authority" and allow Riverview and Guthrie to deduct their claimed legitimate business expenses.  Accordingly, the Court finds that the Commission is entitled to disgorgement from Riverview and Guthrie, jointly and severally, in the amount of $110,074.50.[3]

**B.   Prejudgment Interest**

The Commission also requests an award of prejudgment interest on the disgorgement amount.  The decision to grant prejudgment

---

[3] Calculated as follows:  $507,772 (the total proceeds from Riverview's sale of BIH shares) minus $238,676 (the amount Riverview sent directly to entities controlled by Hayter) minus $159,021.50 (the additional amount Riverview sent, via Wahoo and Bonn, to entities controlled by Hayter).

interest, as well as the rate at which interest is awarded, are within the discretion of the district court. SEC v. Carrillo, 325 F.3d 1268, 1273 (11th Cir. 2003). The purpose of prejudgment interest is "to divest those found liable under the securities laws of any benefit accrued from the use of the ill-gotten gain." SEC v. Yun, 148 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001), aff'd in part and vacated in part on other grounds, 327 F.3d 1263.

Pursuant to their consent judgments, Bimini Reef, Riverview, Astrom, and Guthrie agreed that they would pay prejudgment interest on their ill-gotten gains "calculated from June 1, 2009, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)." (Docs. ##21-1 to 21-4.) Based upon the facts of the case and Defendants' consents, the Court finds that prejudgment interest calculated from June 1, 2009 is appropriate in this case.

The Commission seeks prejudgment interest through the filing of its motion on April 19, 2013. Defendants argue that the proper end date for prejudgment interest is October 25, 2010, the date the Court entered its initial judgments against them. According to Defendants, allowing interest through April 19, 2013 would unfairly prejudice them for the Commission's unilateral decision to wait more than two years before filing the instant motion for final judgment. The Court agrees, and will impose prejudgment interest, based on the rate of interest used by the Internal

Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2), from June 1, 2009 through October 25, 2010.

**C.   Civil Penalty**

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." Monterosso, 756 F.3d at 1338.  Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act authorize three tiers of civil monetary penalties against violators of the Acts. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d).  The first tier applies to any violation of the Acts.  Id.  The second tier applies to violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." Id.  The third tier applies to any violation satisfying the second-tier criteria that also "resulted in substantial losses or created a significant risk of substantial losses to other persons." Id.

The amount of the civil penalty is determined by the district judge "in light of the facts and circumstances" and subject to statutorily-prescribed maximums.  15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d).  For violations occurring between February 2005 and March 2009, the time period at issue here, the statutory penalties are: $6,500 for each first tier violation; $65,000 for each second tier violation; and $130,000 for each third tier violation.  17 C.F.R. § 201.1003, Tbl. III.  However, the maximum statutory penalty may

be exceeded up to and including the "gross amount of pecuniary gain to the defendant as a result of the violation." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d). In evaluating the facts and circumstances of the case, the Court looks to factors such as:

> (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing, (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons, (6) defendants' lack of cooperation and honesty with authorities, if any, and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

SEC v. Aerokinetic Energy Corp., No. 08-CV-1409, 2010 WL 5174509, at *5 (M.D. Fla. Dec. 15, 2010) (quotation omitted), aff'd, 444 F. App'x 382 (11th Cir. 2011).

The Commission seeks civil penalties of $6,500 against Guthrie and Astrom.[4] In seeking these amounts, the Commission acknowledges that Guthrie and Astrom "both agreed early in this case to bifurcated judgments, agreed to cooperate with the Commission's case, and . . . appear to have low net worth." (Doc. #149, p. 11.) In addition to the mitigating factors noted by the Commission, Guthrie and Astrom argue that the violations at issue were isolated incidents and that they did not act with scienter

---

[4] The Commission also sought civil penalties against BIH, Bimini Reef and Riverview. The Commission moves to dismiss those claims because the entities are defunct and/or no longer operating. (Doc. #149, p. 10 n.9.) That request is granted.

because they relied on an attorney opinion letter which erroneously concluded that the BIH shares were eligible for sale. In light of these factors, the Court will impose a civil penalty against Guthrie and Astrom in the amount of $100 each.

Accordingly, it is hereby

**ORDERED:**

Plaintiff Securities and Exchange Commission's Motion for Final Judgments Against Defendants Bimini Reef Real Estate, Inc., Riverview Capital Inc., Christopher L. Astrom, and Damian B. Guthrie (Doc. #149) is **GRANTED IN PART and DENIED IN PART.** The Commission's claims for civil penalties against Defendants BIH Corporation, Bimini Reef Reel Estate, Inc., and Riverview Capital Inc., are **DISMISSED.** Judgment is entered in favor of Plaintiff and against Defendants Bimini Reef Real Estate, Inc., Riverview Capital Inc., Christopher L. Astrom, and Damian B. Guthrie as set forth in the Court's October 25, 2010 Judgments (Docs. ##24-25) and as follows:

1. Defendants Christopher L. Astrom and Bimini Reef Real Estate, Inc. are liable, jointly and severally, for disgorgement in the amount of $262,416, representing profits gained as a result of the conduct alleged in the Complaint, plus prejudgment interest calculated from June 1, 2009 to October 25, 2010, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).

2. Christopher L. Astrom shall pay a civil penalty in the amount of $100, pursuant to Section 20(d) of the Securities Act of 1933.

3. Defendants Damian B. Guthrie and Riverview Capital Inc. are liable, jointly and severally, for disgorgement in the amount of $110,074.50, representing profits gained as a result of the conduct alleged in the Complaint, plus prejudgment interest calculated from June 1, 2009 to October 25, 2010, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).

4. Damian B. Guthrie shall pay a civil penalty in the amount of $100, pursuant to Section 20(d) of the Securities Act.

5. All amounts ordered shall be due and payable within thirty (30) days of the Court entering this Final Judgment. Post-judgment interest shall accrue pursuant to 28 U.S.C. § 1961. All payments shall be made by sending a United States postal money order, certified check, bank cashier's check or bank money order payable to the Registry of the Court of the United States District Court for the Middle District of Florida under cover letter that identifies the name and number of this action, with a copy of said cover letter and money order or check to Christopher E. Martin, Esq., Securities and Exchange Commission, Senior Trial Counsel, 801 Brickell Avenue, Suite 1800, Miami, Florida, 33131.

   a) For any payments made, the party shall relinquish all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to any of them. The Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System (CRIS) or any other type of interest bearing account that is utilized by the Court. These funds, together with any interest and income earned thereon (collectively, the Fund), shall be held in the interest bearing account until further order of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions

        of Section 308(a) of the Sarbanes-Oxley Act of 2002.

      b) The party shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amount they pay pursuant to this Final Judgment, regardless of whether such penalty amounts or any party thereof are added to a distribution fund or otherwise used for the benefit of investors. The party further shall not claim, assert, or apply for tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts they pay pursuant to this Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

6. The Court will retain jurisdiction over the enforcement of the judgment upon entry.

The Clerk shall enter judgment in favor of the Commission and against Defendants Bimini Reef Real Estate, Inc., Riverview Capital Inc., Christopher L. Astrom, and Damian B. Guthrie as set forth herein and in the Court's October 25, 2010 Judgments (Docs. ##24-25).

**DONE and ORDERED** at Fort Myers, Florida, this ___28th___ day of January, 2015.

                                                    _____
                                                    JOHN E. STEELE
                                                    UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record