UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SECURITIES & EXCHANGE COMMISSION,

    Plaintiff,

v.    Case No: 2:10-cv-577-FtM-29DNF

EDWARD W. HAYTER, NORTH BAY SOUTH CORPORATION, THE CADDO CORPORATION, and BEAVER CREEK FINANCIAL CORPORATION,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Securities and Exchange Commission's Motion for Final Judgment Against North Bay South Corporation (Doc. #149) filed on April 19, 2013.[1] No response has been filed and the time to respond has expired. For the reasons set forth below, the motion is granted.

**I.**

This case is a civil enforcement action brought by the Securities and Exchange Commission (the Commission or SEC) concerning a scheme to "pump and dump" shares of BIH Corporation's

---

[1] The motion also seeks final judgments against Defendants Bimini Reef Real Estate, Inc., Riverview Capital Inc., Christopher L. Astrom, and Damian B. Guthrie. The Court addressed that portion of the motion in a separate Order. (Doc. #265.)

(BIH) stock on the investing public. The basic underlying facts, as set forth in the Complaint,[2] are as follows:

BIH, which traded as a penny stock, claimed to be a holding company specializing in the restaurant and hospitality industry. BIH's website stated that an individual named Cris Galo, an accomplished entrepreneur, was the president and CEO of BIH. In reality, Defendants Edward W. Hayter (Hayter) and Wayne A. Burmaster (Burmaster) controlled every aspect of BIH. During 2008 and 2009, in order to effectuate the pump and dump scheme, Hayter and Burmaster issued numerous fraudulent press releases on behalf of BIH. The press releases dramatically increased the price and trading volume of BIH shares.

During the same time period, Hayter and Burmaster sold tens of millions of unregistered shares of BIH stock to various companies for little or no consideration. One of those companies, Defendant North Bay South Corporation (North Bay), was controlled by Burmaster. In turn, those companies sold the newly-received stock to unwitting investors at prices inflated by BIH's fraudulent press releases. All told, those companies sold 89.8 million BIH

---

[2] On September 26, 2012, following its default, the Court entered a Judgment against Defendant North Bay South Corporation. (Doc. #121.) A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009) (quotation omitted).

shares for a total of $1,121,051. The companies retained a portion of the sales proceeds and sent the remaining funds to entities controlled by Burmaster and Hayter. Of relevance here, North Bay received more than $110,000 from selling shares of BIH.

Following its default, the Court entered a Judgment against North Bay permanently enjoining it from committing further securities law violations; ordering it to pay disgorgement; and imposing a civil penalty in an amount to be determined by the Court upon a motion by the Commission. (Doc. #121.) The Commission filed its motion (Doc. #149) on April 19, 2013, and an evidentiary hearing was held on January 27, 2015.

## II.

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." SEC v. Monterosso, 756 F.3d 1326, 1338 (11th Cir. 2014). Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act authorize three tiers of civil monetary penalties against violators of the Acts. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d). The first tier applies to any violation of the Acts. Id. The second tier applies to violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." Id. The third tier applies to any violation satisfying the second-tier criteria that also "resulted in

substantial losses or created a significant risk of substantial losses to other persons." Id.

The amount of the civil penalty is determined by the district judge "in light of the facts and circumstances" and subject to statutorily-prescribed maximums. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d). For violations occurring between February 2005 and March 2009, the time period at issue here, the statutory penalties are: $6,500 for each first tier violation; $65,000 for each second tier violation; and $130,000 for each third tier violation. 17 C.F.R. § 201.1003, Tbl. III. However, the maximum statutory penalty may be exceeded up to and including the "gross amount of pecuniary gain to the defendant as a result of the violation." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d). In evaluating the facts and circumstances of the case, the Court looks to factors such as:

> (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing, (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons, (6) defendants' lack of cooperation and honesty with authorities, if any, and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

SEC v. Aerokinetic Energy Corp., No. 08-CV-1409, 2010 WL 5174509, at *5 (M.D. Fla. Dec. 15, 2010) (quotation omitted), aff'd, 444 F. App'x 382 (11th Cir. 2011).

It is indisputable that the pump and dump scheme involved fraud. Thus, North Bay is subject to either a second or third tier penalty depending upon whether the scheme resulted in, or created a significant risk of, substantial losses to other persons. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d). While the Acts do not define the term "substantial loss," the prevailing view in this District is that the $1.1 million loss in this case is sufficiently substantial to subject North Bay to third tier penalties. SEC v. Aleksey, No. 07-CV-159, 2007 WL 1789113, at *2 (M.D. Fla. June 19, 2007) ($82,960.18 was a substantial loss); Aerokinetic, 2010 WL 5174514, at *7 ($500,000 was a substantial loss); SEC v. Simmons, No. 04-CV-2477, 2008 WL 7935266, at *20 (M.D. Fla. Apr. 25, 2008) ($1,144,583.95 was a substantial loss). Accordingly, the imposition of a third-tier civil penalty against North Bay is appropriate.

Following its default, the Court entered a judgment finding North Bay liable for one count of selling unregistered securities in violation of Sections 5(a) and 5(c) of the Securities Act. (Doc. #121.) Accordingly, the maximum civil penalty the Court may impose is the greater of $130,000 or North Bay's pecuniary gain. In is motion, the Commission relies upon the declaration of Timothy Galdencio (Galdencio), a Commission accountant who examined the records of BIH, North Bay, and other entities involved in the pump and dump scheme. (Doc. #149-1.) The declaration states that

North Bay received $115,612 from its sale of BIH shares. (Id.) At the evidentiary hearing held on January 27, 2015, Galdencio testified that North Bay transferred a portion of those sales proceeds to other entities involved in the pump and dump scheme, and retained $86,557. Based upon Galdencio's calculations, the Commission requests that the Court impose a civil penalty equal to North Bay's $86,557 pecuniary gain.[3] Taking into account the facts and circumstances of this case as set forth above, the Court agrees with the Commission that a civil penalty in the amount of North Bay's $86,557 pecuniary gain is appropriate.

Accordingly, it is hereby

**ORDERED:**

Plaintiff Securities and Exchange Commission's Motion for Final Judgment Against North Bay South Corporation (Doc. #149) is **GRANTED**. Judgment is entered in favor of Plaintiff and against Defendant North Bay South Corporation as set forth in the Court's September 26, 2012 Opinion and Order (Doc. #121) and as follows:

1. North Bay South Corporation (North Bay) shall pay a civil penalty in the amount of $86,557, pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d). North Bay shall make this payment within 30 days after entry of this Judgment. Postjudgment interest shall accrue pursuant to 28 U.S.C. § 1961.

---

[3] Galdencio initially calculated North Bay's pecuniary gain as $102,612. (Doc. #149-1.) He subsequently discovered that North Bay made additional transfers which reduced its pecuniary gain to $86,557.

a)  All payments shall be made by sending a United States postal money order, certified check, bank cashier's check or bank money order payable to the Registry of the Court of the United States District Court for the Middle District of Florida under cover letter that identifies the name and number of this action, with a copy of said cover letter and money order or check to Christopher E. Martin, Esq., Securities and Exchange Commission, Senior Trial Counsel, 801 Brickell Avenue, Suite 1800, Miami, Florida, 33131.

b)  For any payments made, North Bay shall relinquish all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to North Bay. The Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System (CRIS) or any other type of interest bearing account that is utilized by the Court. These funds, together with any interest and income earned thereon (collectively, the Fund), shall be held in the interest bearing account until further order of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002.

c)  Additionally, North Bay shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amount paid pursuant to this Final Judgment, regardless of whether such penalty amount or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.  North Bay further shall not claim, assert, or apply for tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amount he pays pursuant to this Final

        Judgment, regardless of whether such penalty amount or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

2. The Court will retain jurisdiction over the enforcement of the judgment upon entry.

The Clerk shall enter judgment in favor of the Commission and against Defendant North Bay South Corporation as set forth herein and in the Court's September 26, 2012 Opinion and Order (Doc. #121), terminate all pending motions and deadlines as moot, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___28th___ day of January, 2015.

*/s/ John E. Steele*
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record